UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Nicole Van Dorn, as surviving spouse and personal
representative for the Estate of Lt. J. Wesley Van Dorn,
USN, deceased;

Amy Snyder, as surviving spouse and personal
representative for the Estate of Lt. Sean Christopher
Snyder, USN, deceased;

Cheyenne Collins, as surviving spouse and personal
representative for the Estate of Petty Officer 3rd Class
Brian Andrew Collins, USN, deceased; and

Petty Officer 2nd Class Dylan Morgan Boone, USN,

Plaintiffs,

- against -

Sikorsky Helicopter Corporation; Sikorsky Support
Service, Inc., dba Sikorsky Aerospace Services; General
Electric Company; E.I. du Pont de Nemours and
Company; and L-3 Communications Corporation,

Defendants.

**Docket No. 3:15-cv-01877-AWT**

**FIRST AMENDED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

Plaintiffs by and through their attorneys, KREINDLER & KREINDLER LLP,
respectfully allege:

**PLAINTIFFS**

1.    On January 8, 2014, Lt. J. WESLEY VAN DORN, USN (hereinafter "VAN

DORN") was on active duty in the United States Navy and the pilot of a Sikorsky MH-53E Sea

Dragon helicopter, Bureau Number (BUNO) 163070, call sign Vulcan 543 (hereinafter "subject

helicopter"), which crashed off the coast of Virginia Beach, Virginia. VAN DORN was killed

as a result of the crash of the subject helicopter.

2.  Plaintiff NICOLE VAN DORN is the duly appointed personal representative for the Estate of Lt. J. Wesley Van Dorn, and she brings this action in her individual capacity as the surviving spouse of VAN DORN, in her representative capacity for the Estate of Lt. J. Wesley Van Dorn and for the decedent's two natural infant children, surviving parents, siblings and next of kin. NICOLE VAN DORN was appointed personal representative for the Estate of Lt. J. Wesley Van Dorn in Virginia Beach, Virginia, on December 17, 2015.

3.  At the time of his death, VAN DORN was a citizen of Virginia.

4.  On January 8, 2014, Lt. SEAN CHRISTOPHER SNYDER, USN (hereinafter "SNYDER") was on active duty in the United States Navy and was the co-pilot of the subject helicopter. SNYDER was killed as a result of the crash of the subject helicopter.

5.  Plaintiff AMY SNYDER is the duly appointed personal representative for the Estate of Lt. Sean Christopher Snyder, and she brings this action in her individual capacity as the surviving spouse of SNYDER, in her representative capacity for the Estate of Lt. Sean Christopher Snyder and for the decedent's four natural infant children, surviving parents, siblings and next of kin. AMY SNYDER was appointed as personal representative for the Estate of Lt. Sean Christopher Snyder in Virginia Beach, Virginia, on December 17, 2015.

6.  At the time of his death, SNYDER was a citizen of Virginia.

7.  On January 8, 2014, Petty Officer 3rd Class BRIAN ANDREW COLLINS, USN (hereinafter "COLLINS") was on active duty in the United States Navy and was an aircrewman on board the subject helicopter. COLLINS was killed as a result of the crash of the subject helicopter.

8.  Plaintiff CHEYENNE COLLINS is the duly appointed personal representative for the Estate of Petty Officer 3rd Class Brian Andrew Collins, and she brings this action in her

individual capacity as the surviving spouse of COLLINS, in her representative capacity for the Estate of Petty Officer 3rd Class Brian Andrew Collins and for the decedent's surviving parents, siblings and next of kin. CHEYENNE COLLINS was appointed as personal representative for the Estate of Petty Officer 3rd Class Brian Andrew Collins in Norfolk, Virginia, on December 16, 2015.

9.    At the time of his death, COLLINS was a citizen of Virginia.

10.    On January 8, 2014, Plaintiff Petty Officer 2nd Class DYLAN MORGAN BOONE, USN, (hereinafter "BOONE") was on active duty in the United States Navy and was an aircrewman on board the subject helicopter. BOONE was seriously and permanently injured as a result of the crash of the subject helicopter.

11.    BOONE is a citizen of Colorado.

**DEFENDANTS**

12.    At all relevant times herein, Defendant SIKORSKY HELICOPTER CORPORATION (hereinafter "SIKORSKY") was and is a Delaware corporation with its principal place of business in Stratford, Connecticut.

13.    At all relevant times herein, Defendant SIKORSKY SUPPORT SERVICES, INC. (dba Sikorsky Aerospace Services) (hereinafter "SIKORSKY AEROSPACE") was and is a Delaware corporation with its principal place of business in Stratford, Connecticut. SIKORSKY AEROSPACE is a wholly-owned subsidiary of SIKORSKY.

14.    At all times herein mentioned, defendants SIKORSKY and SIKORSKY AEROSPACE, and each of them, and their aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees, permissive users, successors in interest or joint venturers of each other, and were acting within the time, purpose or scope of such agency

or employment or permission, and all acts or omissions alleged herein of each such Defendant were authorized, adopted, approved or ratified by each of the other Defendants named herein.

15. Defendant SIKORSKY designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems, including but not limited to, the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, prepared, wrote, approved and/or sold warnings, instruction and guidance for the use of the subject helicopter, including the use of its electrical systems, including its wiring and wire insulation, fasteners and ties, and fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, and also prepared, wrote, approved and/or sold instructions and warnings for the subject helicopter and its component parts and systems including, but not limited to, its flight manual, maintenance manual, maintenance instructions, service bulletins, inspection schedules and service life schedule.

16. Defendant SIKORSKY AEROSPACE inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems, including, but not limited to the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties.

17. At all relevant times herein, Defendant GENERAL ELECTRIC COMPANY (hereinafter "GE") was and is a New York corporation with its principal place of business in Fairfield, Connecticut.

18. At all times herein mentioned, defendant GE, its aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees, permissive users,

4

successors in interest or joint venturers of each other, and were acting within the time, purpose, or scope of such agency or employment or permission, and all acts or omissions alleged herein of each such Defendant were authorized, adopted, approved, or ratified by each of the other Defendants named herein.

19. Defendant GE, individually and in coordination with defendant SIKORSKY, designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the engines installed on the subject helicopter ("subject helicopter engines") and their component parts and systems, including, but not limited to the subject helicopter engine's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter engine's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, prepared, wrote, approved and/or sold warnings, instruction and guidance for the use of the subject helicopter engines, including the use of their electrical systems, including their wiring and wire insulation, fasteners and ties, and fuel systems, including their fuel lines, fuel transfer tubes, fasteners and ties, and also prepared, wrote, approved and/or sold instructions and warnings for the subject helicopter engines and their component parts and systems including, but not limited to, their maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules.

20. At all relevant times herein, Defendant E.I. DU PONT DE NEMOURS AND COMPANY (hereinafter "DUPONT") was and is a Delaware corporation with its principal place of business in Wilmington, Delaware, and was and is engaging in continuous and systematic contacts with the State of Connecticut.

21. At all times herein mentioned, defendant DUPONT, and its aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees,

5

permissive users, successors in interest or joint venturers of each other, and were acting within the time, purpose, or scope of such agency or employment or permission, and all acts or omissions alleged herein of each such Defendant were authorized, adopted, approved, or ratified by each of the other Defendants named herein.

22. Defendant DUPONT, individually and in coordination with defendants SIKORSKY and GE, designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the wiring used in the electrical systems of the subject helicopter, including its wiring and wire insulation, fasteners and ties, prepared, wrote, approved and/or sold warnings, instruction and guidance for the wiring used in the electrical systems of the subject helicopter, and also prepared, wrote, approved and/or sold instructions and warnings for the wiring used in the electrical systems of the subject helicopter, but not limited to, their maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules.

23. At all relevant times herein, defendant L-3 COMMUNICATIONS CORPORATION (hereinafter "L-3") was and is a Delaware Corporation with its principal place of business in New York, and was and is engaging in continuous and systematic contacts with the State of Connecticut.

24. Defendant L-3 inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems, including, but not limited to the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties.

## JURISDICTION AND VENUE

25. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. The adverse parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Jurisdiction is also based on maritime jurisdiction under 28 U.S.C. § 1333 because the injuries alleged herein occurred on navigable waters off the coast of Virginia.

26. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 with respect to the claim against defendant L-3 in that those claims form part of the same case or controversy.

27. Venue exists in this District in that the requirements of 28 U.S.C §1391 are satisfied as set forth above, inasmuch as the defendants, and each of them, conduct substantial business in and are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to this litigation occurred in this District.

## GENERAL ALLEGATIONS

28. The United States Navy's MH-53E fleet first became operational in 1986. The fleet conducts mine sweeping operations and logistical support, among other services.

29. Helicopter Mine Countermeasures Squadron Fourteen also known as Helmineron Fourteen (hereinafter "HM-14"), is an airborne mine countermeasures squadron in the United States Navy. HM-14 is based in Norfolk, Virginia. HM-14 operates approximately twelve MH-53E helicopters.

30. On November 26, 1990, HM-14 took delivery of the subject helicopter from defendant SIKORSKY.

31. On January 8, 2014, the subject helicopter was being operated by HM-14 for a training flight (hereinafter "the subject flight") involving ocean minesweeping and helicopter ramp operator training.

32. VAN DORN was the pilot for the subject flight and SNYDER was the co-pilot. BOONE, COLLINS, and a third Naval serviceman who is not a party to this suit were aircrewmen.

33. The subject flight took place off the coast of Virginia Beach, Virginia.

34. The subject helicopter took off from Naval Station Norfolk at approximately 8:11 a.m. The subject helicopter began training operations off the coast of Virginia Beach, Virginia at approximately 8:40 a.m. The training involved towing a minesweeping device through the water at approximately 100 feet of altitude.

35. Upon information and belief, at approximately 10:25 a.m., an explosion occurred aft of the subject helicopter's number one engine compartment.

36. Fire and black smoke that smelled like fuel rapidly filled the subject helicopter. The crewmen tried unsuccessfully to extinguish the fire.

37. Blinded by the thick smoke, VAN DORN and SNYDER had no visual reference to the horizon and could not reference their flight instruments. As a result, the pilots lost spatial awareness and the helicopter violently struck the water and began to sink.

38. BOONE, who was severely and permanently injured in the crash, was able to swim to the surface of the water. VAN DORN was visible on the surface thirty to forty yards away from BOONE and was yelling for help. COLLINS was also on the surface of the water, floating unconscious and face down.

39. A Navy rescue helicopter pulled COLLINS and VAN DORN out of the water at approximately 11:15 a.m. and, because of the severity of their injuries, immediately flew them to Sentara Norfolk General Hospital.

40. BOONE and the third crewman were rescued by another Navy helicopter at approximately 11:35 a.m.

41. On arrival at Sentara Norfolk General Hospital, COLLINS could not be revived and was pronounced dead at 11:41 a.m.

42. VAN DORN sustained massive internal injuries, an amputated left hand and right foot, hypothermia, and other severe injuries. VAN DORN was pronounced dead from cardiac arrest at 4:35 a.m.

43. BOONE suffered severe and permanent injuries and ultimately survived. The third crewman also survived.

44. SNYDER was unable to escape the subject helicopter. Navy divers recovered SNYDER's remains from the subject helicopter's cockpit on January 14, 2014.

45. At the time of the subject flight, the subject helicopter and its component parts and systems, including the subject helicopter engines, the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, had recently undergone the first of three life extension maintenance and overhaul phases. As part of these overhaul phases, Kapton wiring in the subject helicopter was to be replaced. At the time of the subject flight, not all of the Kapton wiring had been removed from the subject helicopter.

46. The Kapton wiring was designed, manufactured, tested, inspected, assembled, maintained, marketed, warranted, sold, leased, and/or distributed by Defendant DUPONT and

installed in the subject helicopter by Defendant SIKORSKY with the knowledge of Defendant DUPONT.

47. Kapton wiring is known to be defective and unsafe due to its susceptibility to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration. These defects rendered the wiring in the subject helicopoter prone to arcing events, arc tracking, flashover, deflagration, and other unplanned conduction and energizing events.

48. The life extension maintenance and overhaul phases, as well as maintenance, inspection, updates, overhauls and repairs of the subject helicopter and its component parts, subject engines, wires and wiring insulation, fuel lines/fuel transfer tubes, fasteners and ties were carried out by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE and L-3.

49. Wiring in the subject helicopter, including but not limited to the Kapton wiring, was designed, manufactured, tested, inspected, assembled, maintained, marketed, warranted, sold, leased, and/or distributed by Defendants SIKORSKY, SIKORSKY AEROSPACE, DUPONT, GE and L-3.

50. Portions of the wiring in the subject helicopter, including but not limited to the Kapton wiring, were bundled together by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE AND L-3 using nylon zip ties.

51. An engineering investigation, conducted in furtherance of the Manual of the Judge Advocate General (JAGMAN) final report pertaining to the crash, revealed two "through-wall" holes in the subject helicopter's fuel transfer pressure tube.

52. The fuel transfer pressure tube is an aluminum component of the subject helicopter's fuel transfer system located inside the helicopter. It transfers fuel from storage tanks inside the subject helicopter's sponsons to a location selected by the crew.

53. The first hole was on the front side of the fuel transfer tube and measured .134 inches long and .011 inches wide. The report concluded this rupture was likely caused by a nylon zip tie used to bundle the electric wiring in the subject helicopter, which rubbed against and chafed the fuel transfer tube.

54. The JAGMAN report concluded a nylon zip tie likely caused the breach for two reasons. First, rounded contours at each edge of the breach chafe area were consistent with the contours of a large or medium-sized nylon zip tie. Second, no foreign metal transfer was found in the chafe damage area.

55. Safe operation, repair and maintenance of the MH-53E requires a minimum of two inches between wiring and any flammable liquid, fuel or oxygen line. In addition, wires in the vicinity of fuel transfer tubes must be closely clamped and rigidly supported to prevent contact with ignitable sources. Finally, zip ties should be appropriately fastened to remove any sharp edges that might increase the risk of chafing of adjacent helicopter components.

56. The second hole in the fuel transfer tube was oval shaped and measured .225 by .110 inches. The second hole was located approximately .25 inches below the first hole, near the front side of the fuel transfer tube. The perimeter around the second hole displayed shallow chafe damage into the parent material of the tube. Stereoscopic examination of the second hole revealed it was likely caused by electrical arcing/shorting in an area of chafing damage, which was produced by an active conductor tack welding directly to the surface of the fuel transfer

tube. Stereoscopic examination also revealed a dispersal of carbon around the perimeter of the hole, consistent with a fuel vapor cloud perimeter.

57. The JAGMAN report concluded that wire bundle chafing caused a breach in the insulation of an actively conductive wire near the fuel transfer tube, causing electrical arcing to the fuel transfer tube's chafed surface and resulting in the ignition of fuel or fuel vapor.

58. The resulting explosion caused the onboard fire that directly led to the subject crash, the deaths of VAN DORN, SNYDER, and COLLINS, and the serious and permanent injuries suffered by BOONE.

**FIRST CLAIM FOR WRONGFUL DEATH**
**AND SURVIVAL DAMAGES ARISING OUT OF THE**
**WRONGFUL DEATHS OF LT. J WESLEY VAN DORN, LT. SEAN CHRISTOPHER**
**SNYDER AND PETTY OFFICER THIRD CLASS BRIAN ANDREW COLLINS**

59. PLAINTIFFS hereby incorporate by reference paragraphs 1 through 58 above.

60. On January 8, 2014, Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 owed PLAINTIFFS a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, and the duty to use reasonable care in the development, production and distribution of instructions for the safe use of the subject helicopter, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter and its component parts and systems, including electrical wires, wire insulation, fuel lines/fuel transfer

tubes, fasteners, and ties related thereto, to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including PLAINTIFFS.

61. Upon information and belief, at all relevant times stated herein, the subject crash, injuries, death, and resultant damages were proximately caused by the negligence of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, by and through their officers, agents, employees, servants and others under their employ and control, in that Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 breached their aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, fuel systems, fuel lines/fuel transfer tubes, and ties related thereto, and failed to adequately detect, correct and warn or caution about dangerous and unsafe conditions causing the subject helicopter, its electrical system, including its electrical wires and wire insulation, and its fuel system, including its fuel lines/fuel transfer tubes to be unairworthy and/or otherwise unsafe on and prior to January 8, 2014, and caused or contributed to the crash of the subject helicopter.

62. Specifically, Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 were negligent, by act or omission, and breached their duty of care owed to PLAINTIFFS in one or more of the following respects, by:

   a. Failing to employ the proper safe distance and other safeguards between: (1) the fuel lines/fuel transfer tubes running from the subject helicopter's fuel tanks to the engines; and (2) wire bundles used to transmit electrical currents to helicopter components and systems;

13

b. Failing to properly secure zip ties that were supposed to safely bundle and stow electrical wires and failing to keep the zip ties from contacting the fuel lines/fuel transfer tubes and other helicopter components containing ignitable substances;

c. Failing to prevent chafing of the fuel lines/fuel transfer tubes and electrical wires by the zip ties, causing damage and deterioration of the fuel lines/fuel transfer tubes, and electrical wires; and failing to prevent electrical current, heat, and electrical arcing to ignitable fuels and/or fuel vapors from the compromised and damaged fuel lines/fuel transfer tubes and electrical wires, causing an explosion, fire and blinding smoke.

d. Failing to adequately warn users, operators and maintainers of the subject helicopter of the chafing risks posed by the use of nylon zip ties and/or improperly secured nylon zip ties.

e. Failing to adequately warn users, operators and maintainers of the subject helicopter of the risks posed by close proximity between electric wires and fuel lines/fuel transfer tubes.

f. Manufacturing, distributing, installing and failing to remove Kapton wiring in the subject helicopter, which was defective and unsafe due to its susceptibility to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat and disintegration, and which defects rendered the wiring in the subject helicopter prone to arcing events, arc tracking, flashover, deflagration and other unplanned conduction and energizing events.

g. Manufacturing, distributing and installing fuel lines/fuel transfer tubes that were defective and unsafe due to their susceptibility to corrosion, degradation, deterioration, wear and alteration.

63. On January 8, 2014, the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were unreasonably dangerous and unsafe by reason of the defective design, manufacture, assembly, testing, inspection, service, distribution and sale of the subject helicopter and its component parts, and its inadequate and unsafe instructions, manuals, cautions, and warnings by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3.

64. At all times material hereto and prior to January 8, 2014, Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 had an ongoing and continuing duty to warn and were required by contract, specification, standard and/or otherwise, to make certain that any defects in the component and replacement parts for the subject helicopter, including, but not limited to, the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties relating thereto, were corrected prior to causing injury or death.

65. Upon information and belief, Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 breached their post-sale duty to adequately warn of and to correct the defective and dangerous conditions in the component and replacement parts for the subject helicopter, including, but not limited to, the subject helicopter engines, electrical

systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto.

66. As a proximate cause of the defective conditions of the component and replacement parts for the subject helicopter, including but not limited to the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, inadequate and defective warnings, and the failure to warn of and/or correct these defects, as alleged herein, and as a direct result of the negligent acts and omissions of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, the subject helicopter crashed and VAN DORN, SNYDER, and COLLINS suffered fatal injuries.

67. On January 8, 2014, the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and intended to be used, and in a manner foreseeable to defendants and for which adequate and safe instructions, manuals, cautions and warnings were required to be issued.

68. The defects in the design, manufacture, assembly, instructions, manuals and warnings, testing, inspection, service, distribution and sale of the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, caused the subject helicopter to crash and caused VAN DORN, SNYDER, and COLLINS to suffer serious and fatal injuries.

69. In addition, as shown by the sudden malfunction on board the subject helicopter, there were catastrophic defects in the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto. Said defects existed at the time the subject helicopter left the control of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 and were not solely the result of causes other than a product defect existing at the time of the manufacture, distribution, maintenance and repair of the subject helicopter, subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3.

70. Prior to January 8, 2014, Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 expressly and/or implicitly warranted and represented that the subject helicopter, the subject helicopter engines, and their component parts, including electrical systems, electrical wires, wiring insulation, fasteners and ties relating thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and that the instructions, manuals, cautions, and warnings that had been issued were adequate and safe, and further that the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were free from defects.

71. Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 breached said express and implied warranties in that on January 8, 2014, the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were not airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and the instructions, manuals and warnings which had been issued were not adequate and safe, but were defective and thereby caused the subject crash and caused VAN DORN, SNYDER, and COLLINS to suffer serious and fatal injuries.

72. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, and the death of VAN DORN as aforesaid, the Estate of Lt. J Wesley Van Dorn, the decedent's wife, two natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

73. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, Decedent VAN DORN sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating

conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of decedent's wrongful death.

74.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties, of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, and the death of SNYDER as aforesaid, the Estate of Lt. Sean Christopher Snyder, the decedent's wife, four natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

75.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, SNYDER sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of decedent's wrongful death.

76.   As a proximate cause of the  negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, and the death of COLLINS as aforesaid, the Estate of Petty Officer 3rd Class Brian Andrew Collins, the decedent's wife, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective

accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education and are entitled to be compensated therefor.

77. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, Decedent COLLINS sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of decedent's wrongful death.

78. VAN DORN, SNYDER, and COLLINS allege that Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 should be punished by an award of exemplary damages over and above compensatory damages, sufficient to deter Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 and others similarly situated from committing the acts and/or omissions detailed herein.

79. By reason of the foregoing, PLAINTIFFS are entitled to recover all legally available damages including, but not limited to, damages for: sorrow, mental anguish and solace, pre-death pain and suffering, loss of income, services, protection, care, and assistance of the deceased, medical expenses, funeral expenses and punitive damages, in amounts according to proof and within the jurisdiction of this court.

**SECOND CLAIM FOR DAMAGES FOR PERSONAL INJURIES**
**OF PETTY OFFICER 2ND CLASS DYLAN MORGAN BOONE**

80. Plaintiff BOONE hereby incorporates by reference paragraphs 1 through 79 above.

81. As a proximate cause of the aforesaid negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, BOONE has sustained serious and permanent personal, physical and emotional injuries.

82. As a result of said injuries, BOONE has lost earnings and earnings capacity. BOONE will pray leave of court to be compensated for both past and future claimed lost earnings and earnings capacity at the time of trial.

83. BOONE has and will also continue to suffer severe and excruciating physical pain and suffering, distressing mental anguish, fear of impending death, and emotional distress as a result of said injuries. In the treatment of the aforesaid injuries, BOONE was compelled to and did employ the services of physicians, surgeons, and other medical personnel and incurred expenses relative to the care and treatment of said injuries. BOONE is informed and believes and thereupon alleges that he will be compelled to seek further treatment in the future for care and treatment of said injuries and to incur further expenses for the same. BOONE will pray leave of court to receive compensation for both past and future claimed medical and related expenses at the time of trial.

84. BOONE alleges that Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 should be punished by an award of exemplary damages over and above compensatory damages, sufficient to deter Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 and others similarly situated from committing the acts and/or omissions detailed herein.

85. By reason of the foregoing, BOONE is entitled to recover the aforesaid damages and any and all other available damages under applicable law from defendants in amounts according to proof and within the jurisdiction of this Court.

WHEREFORE, PLAINTIFFS respectfully request that judgment be entered on their behalf for compensatory damages against Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, and each of them, as set forth above, as well as punitive/exemplary damages over and above compensatory damages against Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 and each of them, together with an award of pre and post judgment interest, costs and attorneys' fees, and such other relief as this Court may deem appropriate.

### JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

Dated: March 25, 2016

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: _____
    Andrew J. Maloney (CT 15639)
    Francis G. Fleming, Jr.
    750 Third Avenue
    New York, New York 10017
    Tel.: (212) 687-8181
    Fax: (212) 972-9432
    Email: amaloney@kreindler.com
    Email: ffleming@kreindler.com
    *Attorneys for Plaintiff*

## CERTIFICATION

I hereby certify that on this 25th day of March, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electric filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Frank G. Usseglio
Kenny, O'Keefe & Usseglio, P.C.
Capitol Place
21 Oak Street
Hartford, CT 06106
fusseglio@kou-law.com
*Attorneys for Defendants, Sikorsky Aircraft Corporation*
*and Sikorsky Support Services, Inc.*

Kevin Smith, Esq.
Wiggin & Dana LLP
P.O. Box 1832
New Haven, CT 06508-1832
ksmith@wiggin.com
*Attorneys for Defendant, General Electric Company*

Lisa Savitt, Esq.
The Axelrod Firm, PC
5028 Wisconsin Avenue, N.W.  Suite 100
Washington D.C.  20016
lsavitt@theaxelrodfirm.com
*Attorneys for Defendant, E.I. du Pont de Nemours and Company*

Steven E. Arnold, Esq.
SA Law, P.C.
41 North Main St.
Suite 201
P.O. Box 270675
West Hartford, CT 06127-0675
sea@salaw.us
*Attorneys for Defendant, L-3 Communications Corporation*

    /s/ Andrew J. Maloney
ANDREW J. MALONEY