# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Nicole Van Dorn, as Surviving Spouse and Personal Representative for the Estate of LT J Wesley Van Dorn, USN, deceased; | |
| | Docket No. 3:15-cv-01877-AWT |
| Amy Snyder, as Surviving Spouse and Personal Representative for the Estate of LT Sean Christopher Snyder, USN, deceased; | |
| Cheyenne Collins, as Surviving Spouse and Personal Representative for the Estate of Petty Officer 3rd Class Brian Andrew Collins, USN, deceased; and | |
| Petty Officer 2nd Class Dylan Morgan Boone, USN, | |
| Plaintiffs, | |
| - against - | |
| Sikorsky Aircraft Corporation; Sikorsky Support Services, Inc. dba Sikorsky Aerospace Services; | |
| General Electric Company; | |
| E.I. du Pont de Nemours and Company; and | |
| L-3 Communications Corporation, | |
| Defendants. | May 19, 2016 |

# MEMORANDUM OF LAW IN SUPPORT OF
## GENERAL ELECTRIC COMPANY'S MOTION TO DISMISS AND STRIKE

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant General Electric Company ("GE") hereby submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Second Amended Complaint dated May 13, 2016 (ECF No. 46) ("Complaint"). As established below, the Complaint impermissibly engages in "group pleading," raising identical allegations of liability against all Defendants, including GE, and failing to apprise each

**ORAL ARGUMENT REQUESTED**

Defendant of its alleged wrongdoing.  The Complaint, therefore, violates Federal Rule of Civil Procedure 8 and should be dismissed.[1]

In addition, GE moves to dismiss the Complaint pursuant to Rule 12(b)(6) and to strike Plaintiffs' jury demand pursuant to Rule 12(f) on the grounds set forth in Defendants Sikorsky Aircraft Corporation's and Sikorsky Support Services Inc.'s Motion to Dismiss and accompanying Memorandum of Law dated May 19, 2016 (ECF No. 52), which GE incorporates by reference as if fully restated herein.  As discussed in Sikorsky's moving papers, Plaintiffs' claims should be dismissed because (1) the Death on the High Seas Act, 46 U.S.C. app. § 761 et seq., bars Plaintiffs' state, common law, and/or general maritime law wrongful death and

---

[1] GE raised these issues with Plaintiffs on several prior occasions.  For example, before Plaintiffs filed their earlier First Amended Complaint (which contained allegations that are substantially identical to those in the Complaint), Plaintiffs provided a draft to GE, to which GE responded:

> Thank you for the opportunity to review the proposed amended complaint.  We note that it deficiently conflates all four defendants together in making all substantive allegations (see, e.g., paragraph 27, etc.).  This Circuit has been clear in holding that undifferentiated allegations against a group of defendants fail to apprise each defendant of their allegedly tortious conduct and thus violates the Rule 8 standard to provide fair notice of a plausible claim.  See Atuahene v. City of Hartford, 10 Fed. Appx. 33 (2d Cir. 2001) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard"); Ochre LLC v. Rockwell Architecture Planning & Design, 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants.  A plaintiff cannot merely lump all the defendants together in each claim and provide no factual basis to distinguish their conduct."); Southerland v. New York City Housing Authority, 2010 WL [4916935], at *2-3 (E.D.N.Y. Nov. 23, 2010) ("Plaintiff's complaint fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual and agency.  Plaintiff's statement of facts lists allegations against 'defendants' generally, however it fails to distinguish defendants' conduct or allege facts against any individual defendant.").

Correspondence dated March 23, 2016.

survival claims;[2] and (2) Plaintiffs' Complaint fails to allege a cognizable strict product liability claim because the subject military engines, like the helicopter, are not a "product" under federal maritime law.  Moreover, the Court should strike Plaintiffs' jury demand because there is no right to a jury trial in cases subject to the admiralty jurisdiction of the Court.

## I.      BACKGROUND

### A.      The Complaint Mirrors the Navy's Findings, But Conspicuously Omits the Absence of Any GE Fault

This action arises from the crash of a Navy-owned and operated Sikorsky MH-53E helicopter on January 8, 2014.  Complaint ¶ 1.  Three crewmembers, Lt. J. Wesley Van Dorn, Lt. Sean Christopher Snyder, and Petty Officer 3rd Class Brian Andrew Collins, were killed as a result of the accident.  Complaint ¶¶ 1, 4, 7.  A fourth crew member, Petty Officer 2nd Class Dylan Moran Boone, was seriously injured.  Complaint ¶10.  Representatives of the decedents, and Petty Officer Boone, have brought this action against Sikorsky Aircraft Corporation ("Sikorsky"), Sikorsky Support Services, Inc. ("Sikorsky Aerospace"), GE, E.I. du Pont de Nemours and Company ("Dupont"), and L-3 Communications Corporation ("L-3") (collectively, "Defendants").

In support of its factual allegations, the Complaint cites exclusively to the U.S. Navy's investigative findings contained in a final report "conducted in furtherance of the Manual of the Judge Advocate General (JAGMAN)."[3]  Complaint ¶ 51.  Consistent with the JAGMAN report, for example, the Complaint alleges that, on January 8, 2014:

---

[2] In the alternative, under Rules 12(e) and (f), the Court should order Plaintiffs to clarify that their wrongful death claims are based solely on the Death on the High Seas Act, and should strike the requests for non-pecuniary damages, including punitive damages, arising from such claims.

[3] A true and accurate copy of the JAGMAN final report is attached hereto as Exhibit A.  As discussed below, because Plaintiffs rely on the JAGMAN report as an integral part of the

- The "subject helicopter was being operated … for a training flight … involving ocean minesweeping and helicopter ramp operator training."  Complaint ¶ 31; <u>accord</u> JAGMAN, Findings of Fact ¶ 1 (p. 000007)

- The subject helicopter allegedly "took off from Naval Station Norfolk at approximately 8:11 a.m." and "began training operations off the coast of Virginia Beach, Virginia at approximately 8:40 a.m."  Complaint ¶ 34; <u>accord</u> JAGMAN, Findings of Fact ¶¶ 6, 8 (p. 000008).

- "At approximately 10:25 a.m. an explosion occurred aft of the subject helicopter's number one engine compartment," causing the helicopter to fill with "fire and black smoke that smelled like fuel."  Complaint ¶¶35, 36; <u>accord</u> JAGMAN, Findings of Fact ¶¶ 18, 22 (p. 000009).

- The pilots "had no visual reference to the horizon and could not reference their flight instruments" and consequently they "lost spatial awareness" causing the helicopter to crash into the Atlantic Ocean.  Complaint ¶ 37; <u>accord</u> JAGMAN, Opinions ¶ 3 (p. 000018).

With respect to causation, the Complaint similarly exclusively cites the JAGMAN

findings, as follows:

- The JAGMAN report "revealed two 'through-wall' holes in the subject helicopter's fuel transfer pressure tube."  Complaint ¶ 51; <u>accord</u> JAGMAN, Findings of Fact ¶ 95(a) (p. 000017).

- The smaller of these holes "was likely caused by chafing of the fuel transfer tube." Complaint ¶ 53; <u>accord</u> JAGMAN, Findings of Fact ¶ 95(b), 95(c), 95(d) (p. 000017).

- The second hole was caused "by electrical arcing/shorting in an area of chafing damage, which was produced by an active conductor tack welding directly to the surface of the fuel transfer tube."  Complaint ¶ 56; <u>accord</u> JAGMAN, Findings of Fact ¶ 95(d) (p. 000017).

- The "wire bundle chafing caused a breach in the insulation of an actively conductive wire near the fuel transfer tube, causing electrical arcing to the fuel transfer tube's chafed surface and resulting in the ignition of fuel or fuel vapor."  Complaint ¶ 57; <u>accord</u> JAGMAN, Findings of Fact ¶ 95(e) (p. 000017); Opinions ¶1 (p. 000018).

Conspicuously absent from the Complaint, however, is the JAGMAN report's affirmative

finding that the engines, originally manufactured by GE, played no causal role in the accident.

---

Complaint, the court may consider this report in connection with this motion to dismiss.  <u>See</u> <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).

According to the JAGMAN investigation and report, "Neither the aircraft's engines nor the aircraft's heater were causal factors."  JAGMAN, Opinions ¶ 9 (p. 000020).  "Not only did all three engines pass their respective in-flight power checks, but none of the recovered engines showed any evidence of fire."  Id.  GE had no other role with respect to the subject helicopter.

### B.    Group Liability Allegations

Ignoring the critical fact that the JAGMAN investigation and report ruled out the engines as a causal factor in the accident, the Complaint maintains that GE somehow played a role in causing the accident.  However, it states no individualized factual allegations supporting liability against GE or, indeed, any Defendant.  Instead, it attempts to plead group liability.

For example, despite expressly acknowledging as background the fundamental distinctions among Defendants regarding their respective roles in connection with the subject aircraft (i.e., the Complaint alleges that Sikorsky designed and manufactured the helicopter; Sikorsky Aerospace and L-3 inspected, serviced, and overhauled the helicopter; GE designed and manufactured the engines on the helicopter; and DuPont designed and manufactured the electrical system on the helicopter, Complaint ¶¶ 15, 16, 19, 22, 23), the Complaint nonetheless conflates all Defendants for purposes of liability, as follows:

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3 … failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter and its component parts."  Complaint ¶ 61.

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by "failing to employ the proper safe distance …between the fuel lines/fuel transfer tubes … and wire bundles used to transmit electrical currents to the helicopter components and systems," Complaint ¶ 62(a).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by "failing to properly secure zip ties that were supposed to safely bundle and stow electrical wires," Complaint ¶ 62(b).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by "failing to prevent chafing of the fuel lines/fuel transfer tubes," Complaint ¶ 62(c).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by failing to warn of "chafing risks" and "the risks posed by close proximity between electric wires and fuel lines/fuel transfer tubes," Complaint ¶ 62(e).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by failing to "remove Kapton wiring in the subject helicopter", Complaint ¶ 62(f).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" acted negligently by "[m]anufacturing, distributing and installing fuel lines/fuel transfer tubes that were defective and unsafe."  Complaint ¶ 62(g).

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" breached a "continuing duty to warn," and "the post-sale duty to adequately warn of and to correct …defective and dangerous conditions in the component and replacement parts for the subject helicopter[.]"  Complaint ¶¶64, 65.

Accord Complaint ¶¶ 69-78, 80 (similar group allegations).

## II.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,  550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Accordingly, a complaint must "be supported by factual allegations" against a defendant that "plausibly give rise to an entitlement to relief."  Id. at 679.

Although the function of a motion to dismiss is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof,'" Rodriguez v. SLM Corp., No. 07cv1866 (WWE), 2009 WL 3769217, at *2 (D. Conn. Nov. 10, 2009) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)), and a court accordingly "must assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving party," id., "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Therefore, a "complaint must contain the grounds upon which the claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Rodriguez, 2009 WL 3769217 at *2 (quoting Twombly, 550 U.S. at 555). Where "the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679.

Moreover, although the court ordinarily looks "only to the allegations on the face of the complaint" in ruling on a motion to dismiss under Rule 12(b)(6)," Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007), in "certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." Id. "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Id. "In addition, even if not attached or incorporated by reference a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." Id. This exception to the general rule typically allows a court to consider a document relied upon in the complaint but that, "read in its entirety, would undermine the legitimacy of the plaintiff's claim" and, thus, "was not

7

attached to the complaint." Global Network Comm., Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006). This "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." Id.

**B.     The Complaint Does Not Reasonably Apprise GE of Its Alleged Liability**

The Complaint should be dismissed in its entirety because it impermissibly lumps all Defendants together and thus fails to state any factual basis for GE's, or any Defendant's, individual liability.

Rule 8 requires Plaintiffs to allege in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the event of multiple defendants, Rule 8 requires, "at a minimum," that "a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" Atuahene v. City of Hartford, 10 Fed. Appx. 33, 33 (2d Cir. 2001) (quoting Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). Courts throughout this Circuit have not hesitated to dismiss complaints that "lump[] all the defendants together in each claim and provide[] no factual basis to distinguish their conduct." Atuahene, 10 Fed. Appx. at 33; see also, In re Elevator Antitrust Litigation, 502 F.3d 47, 50-51 (2d Cir. 2007) (affirming dismissal of complaint where the "complaint enumerates basically every type of conspiratorial activity that one could imagine … the list is in entirely general terms without any specification of any particular activities by any particular defendant; it is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever. Such conclusory allegations of agreement at some unidentified point do not supply facts adequate to show illegality."); Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837

(KBF), 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012)[4] (dismissing complaint under Rule 12(b)(6) where the complaint's "statements do not allege which of the defendants … engaged in the infringing activities[.]  Such 'lumping' of allegations is exactly what the Second Circuit warned against in Atuahene and Simmons; plaintiff cannot force the various defendants to guess at the nature of its claims."); Southerland v. New York City Housing Auth., No. 10-CV-5243 (SLT), 2010 WL 4916935, at *2-3 (E.D.N.Y. Nov. 23, 2010) ("Plaintiff's complaint fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual and agency.  Plaintiffs statement of facts lists allegations against 'defendants' generally, however it fails to distinguish defendants' conduct or allege facts against any individual defendant."); Medina v. Bauer, No. 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8.  Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong.  Accordingly, defendants' motion to dismiss the amended complaint for failure to state any valid claims against Matthew Fischer, Magnetic Snap, and Lanfran Realty is granted.").

One of the most recent cases on point in this Circuit is Ludwig's Drug Store, Inc. v. Forest City Enterprises, Inc., No. 13-CV-6045 (MKB), 2016 WL 915102, at *9-10 (E.D.N.Y. Mar. 4, 2016).  There, the Eastern District of New York dismissed a complaint under Rule 12(b)(6) because it impermissibly lumped all the defendants together under common allegations of liability that failed to apprise them of any specific alleged misconduct.  The plaintiffs alleged racial discrimination in connection with their use of a spectator suite they rented at the Barclay's Center in Brooklyn.  Specifically, Plaintiffs alleged that the Defendants harassed the plaintiffs,

---

[4] Unpublished opinions are attached as Exhibit B.

subjected them to increased security, refused to clean the suite, denied them food and beverage service, and failed to respond properly to maintenance requests.  Id. at *4-5.  Plaintiffs raised these allegations against four defendants, including "Forest," the owner of the arena, and "Compass," the parent company of the arena's catering company, "Levy."  Forest and Compass moved to dismiss the claims raised against them on the grounds that the Second Amended Complaint failed "to allege any specific conduct or action by Forest," and "with respect to Compass, … allege[d] only that Compass is the parent company of Levy."  Id. at *9.  The court agreed, reasoning as follows:

> Rule 8(a) of the Federal Rules of Civil Procedure "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001). However, at a minimum the complaint must, "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" Id. (quoting Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). This standard is not satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." Id. at 34. Rather, a complaint should provide "specification of any particular activities by any particular defendant." In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); see In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("Although Plaintiffs argue that they alleged that the [p]arent [c]ompanies were directly involved in the alleged conspiracy, a reading of the complaint indicates otherwise. The complaint alleges direct involvement of the [p]arent [c]ompanies by way of generic references to 'defendants.' This approach is insufficient." (internal citations omitted)).

Id. at *10.

Moreover, the court also rejected the plaintiffs' argument that they should be given the opportunity to conduct discovery to enable them to state a claim against Forest and Compass:

> During the March 30, 2015 Hearing, counsel for both Forest and Compass argued that the Complaint failed to allege any conduct by Forest or Compass. (Tr. 55:14–18 (Forest); Tr. 49:9–20 (Compass).) In response, Plaintiffs' counsel stated, "I don't think [Plaintiffs] were ever aware as to the extent of [Forest's] . . . connection . . . with [the Arena], and until I am able to do a deposition, I do not believe I can satisfy [the] requirement [of alleging conduct by Forest]." (Tr. 56:19–23.) Given the dearth of any allegations of conduct by Forest or Compass,

the Court dismissed all remaining claims against Forest and Compass as insufficiently pled.

Id.

Similarly, in a product liability case, the Western District of New York dismissed improperly pled group allegations in S.F. v. Archer-Daniels-Midland Co., No. 13-CV-634S, 2014 WL 1600414, at *6 (W.D.N.Y. April 21, 2014). Archer-Daniels-Midland involved a claim that the plaintiff had developed Type 2 diabetes as a result of consuming high-fructose corn syrup. Id. at *2. Plaintiff raised identical allegations against five defendants, each of whom manufactured high-fructose corn syrup for use in a variety of food products. The defendants moved to dismiss the complaint arguing that the plaintiff had "engaged in impermissible group pleading—that is, making undifferentiated allegations against the defendants as a group without identifying any wrongdoing on the part of any particular defendant." Id. at *5. The court agreed and dismissed the complaint. Id. at *6 (citing Zalewski v. T.P. Builders, Inc., No. 1:10-cv-876 GLS/RFT, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court will not accept . . . vague group pleading to serve as a basis for liability."); Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of the collective term 'Defendant' . . . with no distinction as to what acts are attributable to whom," the complaint must be dismissed); Atuahene, 10 F. App'x. at 34 ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard.")).

Here, as established above and in the following examples, the Complaint fails to differentiate GE's conduct from any of the other Defendants:

- The Complaint alleges that all Defendants, without differentiation, "owed PLAINTIFFS a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of

11

the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto[.]"  Complaint ¶ 60.

- The Complaint alleges that all Defendants, without differentiation, owed a further duty "to use reasonable care in the development, production and distribution of instructions for the safe use of the subject helicopter, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter and its component parts and systems, including electrical wires, wire insulation, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including PLAINTIFFS."  Id.

- The Complaint alleges that all Defendants, without differentiation, breached "their aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter and its component parts" and thus proximately caused "the subject crash, injuries, death, and resultant damages."  Id. ¶ 61.

- The Complaint alleges that all Defendants, without differentiation, were negligent in "one or more" of seven specifications of negligence, each primarily focused on the helicopter's wiring and fuel transfer tubes, and none alleging any negligence with respect to the helicopter's engines.  Id. ¶ 62.

- The Complaint alleges that all Defendants, without differentiation, defectively designed, manufactured, assembled, tested, inspected, serviced, distributed and sold the subject helicopter and its component parts, and further failed to provide adequate and safe instructions, manuals, cautions, and warnings regarding their use.  Id. ¶ 63.

- The Complaint alleges that all Defendants, without differentiation, "breached their post-sale duty to adequately warn of and to correct the defective and dangerous conditions in the component and replacement parts for the subject helicopter[.]"  Id. ¶ 65.

Accord Complaint ¶¶ 69-78, 80 (similar group allegations).  In short, the Complaint simply

raises and indiscriminately asserts against all Defendants "every type of [tortious] conduct that

one could imagine" in a negligence and product liability case arising from this accident.  In re

Elevator Antitrust Litigation, 502 F.3d at 50.  The group allegations in the Complaint are in

"entirely general terms without any specification of any particular activities by any particular

defendant." <u>Id</u>.  Looking at these allegations, neither GE nor any other Defendant has "adequate notice . . . as to what they [allegedly] did wrong."  <u>Medina</u>, 2004 WL 136636, at *6.  Thus, Plaintiffs have failed to support their claims for relief against GE with factual allegations that "plausibly give rise to an entitlement to relief," <u>Iqbal</u>, 556 U.S. at 679, and the Complaint should be dismissed in its entirety.

This deficiency in pleading is underscored by the fact that, as noted above, the Complaint expressly acknowledges, as it must, that each Defendant played a distinct role in relation to the subject helicopter.[5]  Consequently, the Complaint itself concedes, at least tacitly, that its broad allegations of group liability could not possibly apply to each and every Defendant.  In other words, the Complaint simply does not "permit the court to infer more than the mere possibility of misconduct," <u>Iqbal</u>, 556 U.S. at 679, by GE or any other Defendant because it fails to "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." <u>Atuahene</u>, 10 Fed. App'x at 33; <u>Ludwig's Drug Store, Inc.</u>, 2016 WL 915102, at *10; <u>Robbins</u>, 519 F.3d at 1250.

Indeed, the Complaint's failure to differentiate GE's alleged misconduct is particularly notable in light of its glaring omission of the JAGMAN report's key finding that the engines were not a causal factor in the accident.  JAGMAN, Opinions ¶ 9 (p. 000020).  Having relied upon the JAGMAN report, the Complaint cannot "cleverly draft" around the fact that, when "read in its entirety," the JAGMAN report fatally "undermine[s] the legitimacy of the plaintiff's

---

[5] Again, the Complaint itself alleges that "SIKORSKY designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired ***the subject helicopter*** and its component parts"; that GE "designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired ***the engines*** installed on the subject helicopter … and their component parts and systems"; that DuPont acted similarly with respect to the "***wiring*** used in the electrical systems of the subject helicopter"; and that L-3 "inspected, tested, serviced, ***maintained, overhauled*** and repaired the subject helicopter and its component parts and systems."  Complaint ¶¶ 15, 19, 22, 24 (emphases added).

claim" against GE.  <u>Global Network</u>, 458 F.3d at 156.  Therefore, plaintiffs do not—and

cannot—state a viable claim against GE.  <u>Id.</u>

## III.    CONCLUSION

For the foregoing reasons, and those discussed in Sikorsky's moving papers and

incorporated herein by reference, GE respectfully requests that the Court dismiss Plaintiffs'

Complaint and strike the jury demand.

DEFENDANT
GENERAL ELECTRIC COMPANY

/s/ Kevin M. Smith
Kevin M. Smith (ct24774)
Erik H. Beard (ct26941)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, Connecticut  06510
Phone: (203) 498-4400
Fax: (203) 782-2889
Email: ksmith@wiggin.com
Email: ebeard@wiggin.com

### CERTIFICATE OF SERVICE

I hereby certify that, on May 19, 2016, a copy of the foregoing Memorandum of Law In Support of General Electric Company's Motion to Dismiss and Strike was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may also access this filing through the Court's CM/ECF System.

/s/ Kevin M. Smith
Kevin M. Smith (ct24774)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, Connecticut  06510
Phone: (203) 498-4400
Fax: (203) 782-2889
Email: ksmith@wiggin.com

12445\31\3455324.v9

15