UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE VAN DORN, as Surviving Spouse | : | CIVIL NO.   3:15-cv-01877-AWT |
| and Personal Representative for the Estate of | : | |
| Lt. J. WESLEY VAN DORN, USN, | : | |
| deceased, et al | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SIKORSKY AIRCRAFT CORPORATION, | : | |
| et al | : | |
| | : | |
| Defendants. | : | MAY 19, 2016 |

**DEFENDANT L-3 COMMUNICATIONS CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F. R. Civ. P."), Defendant

L-3 Communications Corporation ("L-3") herewith submits its Memorandum Of Law In Support Of

Motion To Dismiss Plaintiffs' Second Amended Complaint dated May 13, 2016 (DE 46) ("Complaint")

on the grounds that Plaintiffs' Complaint fails to state claims and remedies upon which relief can be

granted[1] for the for the reasons that: (a) Plaintiffs' Complaint impermissibly engages in group-pleading,

asserts identical allegations of liability against L-3 and the other Defendants, and fails to allege facts with

---

[1] Plaintiffs cannot acquire personal jurisdiction over L-3 in Connecticut. However, for purposes of this action only, L-3 is waiving its right to dismiss Plaintiffs' action for lack of personal jurisdiction.

**ORAL ARGUMENT REQUESTED
NO TESTIMONY REQUIRED**

1

sufficient notice to apprise L-3 of its or the other Defendants' respective alleged wrongdoing; (b) Plaintiffs' state, common law and/or general maritime law wrongful death, survival, and punitive damage claims are preempted by The Death on the High Seas Act ("DOHSA"), 46 U.S.C. 30301, et seq.[2], [3]; (c) Plaintiffs fail to state legally cognizable claims for product liability under general maritime law; and (d) pursuant to F. R. Civ. P. Rule 12(f), Plaintiffs' Jury Trial Demand should be stricken because there is no right to jury trial in cases subject to the admiralty jurisdiction of the Court. L-3 herewith also adopts the points and authorities set forth in the Defendants Sikorsky Aircraft Corporation's, Sikorsky Support Services, Inc.'s, and General Electric Company's motions to dismiss Plaintiffs' Complaint (DEs 52 and 54) and memoranda of law in support thereof (DEs 52-1 and 55) which are incorporated herein by reference.

## I.    BACKGROUND

This action arises from the crash of a United States Navy MH-53E Sea Dragon helicopter, Bureau Number (BUNO) 163070, call sign Vulcan 543 (hereinafter "Subject Helicopter"), which crashed on January 8, 2014 off the coast of Virginia Beach, Virginia.  DE 46 at ¶ 1. The mishap occurred in the Atlantic Ocean, at position N 36 59.2, W 75 37.4, approximately 18 nautical miles east of

---

[2] L-3 maintains that Plaintiff Boone's claims for exemplary damages also are precluded by general maritime law. See *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *Wahlstrom v. Kawasaki Heavy Industries, Ltd*, 4 F.3d 1084 (2d Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *O'Hara v. Celebrity Cruises, Inc.*, 979 F. Supp. 254 (S.D.N.Y. 1997); *McBride v. Estis Well Service, L.L.C.*, 768 F.3d. 382 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 2310 (2015); *Williams v. Carnival Corporation*, 2016 WL 245312 (S.D. Fla. January 21, 2016); *Lee v. Offshore Logistical and Transports, LLC*, 2015 WL 7459734 (E.D. La. 2015). L-3 will address this issue at a later stage in these proceedings, if necessary.

[3] In the alternative, under Rules 12(e) and (f), the Court should order Plaintiffs to clarify that their wrongful death claims are based solely on DOSHA, and should strike the requests for non-pecuniary damages, including punitive damages, arising from such claims.

Cape Henry Lighthouse, Virginia Beach, Virginia. DE 43, Rule 26(f) Report pp. 5, 10. Three crewmembers, Lt. J. Wesley Van Dorn ("Van Dorn"), Lt. Sean Christopher Snyder ("Snyder"), and Petty Officer 3rd Class Brian Andrew Collins ("Collins"), the pilot, co-pilot, and aircrewman, respectively, were killed as a result of the accident ("Wrongful Death Plaintiffs"). *Id.* at ¶¶ 1, 4, 7. A fourth crew member, aircrewman Petty Officer 2nd Class Dylan Moran Boone ("Boone"), was seriously injured in the mishap. *Id.* at ¶10. Representatives of the decedents, and Boone, have brought this action against Sikorsky Aircraft Corporation ("Sikorsky"), Sikorsky Support Services, Inc. ("Sikorsky Aerospace"), General Electric Company ("GE"), E.I. du Pont de Nemours and Company ("Dupont"), and L-3 (collectively, "Defendants"). The First Claim brought by the Wrongful Death Plaintiffs seeks wrongful death and survival damages arising out of the deaths of Van Dorn, Snyder and Collins. The Second Claim brought by Plaintiff Boone seeks damages for personal injuries. Both claims sound in negligence and product liability. All Plaintiffs make claims for both compensatory and punitive damages. Plaintiffs collectively demand a jury trial.

Plaintiffs' Complaint states no individualized factual allegations supporting liability against L-3 or any other Defendant and pleads only group-liability allegations as to all Defendants. Plaintiffs expressly acknowledge fundamental distinctions among the Defendants regarding their alleged respective involvement with the subject aircraft. Plaintiffs' Complaint alleges that Sikorsky designed and manufactured the helicopter; GE designed and manufactured the engines on the helicopter; DuPont designed and manufactured the electrical system on the helicopter; and Sikorsky Aerospace and L-3 inspected, serviced, and overhauled the helicopter. DE 46 at ¶¶ 15, 16, 19, 22, 23. However, Plaintiffs' Complaint conflates all Defendants with Plaintiffs' group-liability allegations. For example:

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3 … failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter and its component parts." *Id.* at ¶ 61;

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3 were negligent, by act or omission, and breached their duty of care owed to PLAINTIFFS … by:

  a. Failing to employ the proper safe distance … between: (1) the fuel lines/fuel transfer tubes … and (2) wire bundles used to transmit electrical currents to the helicopter components and systems.
  b. Failing to properly secure zip ties that were supposed to safely bundle and stow electrical wires … .
  c. Failing to prevent chafing of the fuel lines/fuel transfer tubes and electrical wires by the zip ties … ; and failing to prevent … electrical arching to ignitable fuels and/or fuel vapors from … causing an explosion … .
  d. Failing to adequately warn … of the chafing risks … .
  e. Failing to adequately warn … of the risks posed by close proximity between electric wires and fuel lines/fuel transfer tubes.
  f. Manufacturing, distributing, installing and failing to remove Kapton wiring in the subject helicopter … .
  g. Manufacturing, distributing and installing fuel lines/fuel transfer tubes that were defective and unsafe … . " *Id.* at ¶ 62;

- "Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT, and L-3" breached a "continuing duty to warn," and "the post-sale duty to adequately warn of and to correct … defective and dangerous conditions in the component and replacement parts for the subject helicopter[.]" *Id.* at ¶¶64, 65.

*See also* DE 46 at ¶¶ 67-78.

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully.ö *Id*. Accordingly, a complaint must õbe supported by factual allegationsö against a defendant that õplausibly give rise to an entitlement to relief.ö *Id.* at 679.

Although the function of a motion to dismiss is õ÷merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereofö; *Rodriguez v. SLM Corp.*, No. 07cv1866 (WWE), 2009 WL 3769217, at *2 (D. Conn. Nov. 10, 2009) (quoting *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)); and a court accordingly õmust assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving partyö; *Id.*; õthe tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.ö *Iqbal*, 556 U.S. at 678. Therefore, a õcomplaint must contain the grounds upon which the claim rests through factual allegations sufficient ÷to raise a right to relief above the speculative level.öö *Rodriguez*, 2009 WL 3769217 at *2 (quoting *Twombly*, 550 U.S. at 555). Where õthe well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has allegedô but it has not shownô that the pleader is entitled to relief.ö *Iqbal*, 556 U.S. at 679.

Moreover, although the court ordinarily looks õonly to the allegations on the face of the complaintö in ruling on a motion to dismiss under Rule 12(b)(6)ö; *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); in õcertain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6).ö *Id.* õDocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.ö *Id.* õIn addition, even if not attached or incorporated by reference a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.ö *Id.* Typically this exception to the general rule allows the court to consider a document relied upon in the

5

complaint but that, "read in its entirety, would undermine the legitimacy of the plaintiff's claim" and, thus, "was not attached to the complaint." *Global Network Comm., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). This "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

### III.      ARGUMENT

### A. PLAINTIFFS' GROUP- LIABILITY ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' Complaint does not reasonably apprise L-3 of its alleged liability. Instead, Plaintiffs' Complaint impermissibly engages in "group pleading," asserts identical allegations of liability against L-3 and the other Defendants, and fails to allege facts that provide sufficient notice to apprise L-3 of its or the other Defendants' respective alleged wrongdoing. Plaintiff's Complaint should be dismissed in its entirety because it impermissibly lumps all Defendants together and thus fails to state any factual basis for L-3's, or any other Defendant's, individual liability.

Federal Rule of Civil Procedure 8 requires Plaintiffs to allege in their Complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the event of multiple defendants, Rule 8 requires, "at a minimum," that "a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 33 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). Courts throughout this Circuit have not hesitated to dismiss complaints that "lump[] all the defendants together in each claim and provide[] no factual basis to distinguish their conduct." *Atuahene*, 10 Fed. Appx. at 33; *see also*, *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50-51 (2d Cir. 2007) (affirming dismissal of complaint where the "complaint enumerates basically every type of

6

conspiratorial activity that one could imagine í the list is in entirely general terms without any

specification of any particular activities by any particular defendant; it is nothing more than a list of

theoretical possibilities, which one could postulate without knowing any facts whatever. Such

conclusory allegations of agreement at some unidentified point do not supply facts adequate to show

illegality.ö); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837 (KBF),

2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) (dismissing complaint under Rule 12(b)(6) where

the complaintøs õstatements do not allege which of the defendants í engaged in the infringing

activities[.] Such ±lumpingøof allegations is exactly what the Second Circuit warned against in *Atuahene*

and *Simmons*; plaintiff cannot force the various defendants to guess at the nature of its claims.ö);

*Southerland v. New York City Housing Auth.*, No. 10-CV-5243 (SLT), 2010 WL 4916935, at *2-3

(E.D.N.Y. Nov. 23, 2010) (õPlaintifføs complaint fails to give the defendants fair notice of plaintifføs

claims and fails to allege facts against each individual and agency. Plaintifføs statement of facts lists

allegations against ±defendantsøgenerally, however it fails to distinguish defendantsøconduct or allege

facts against any individual defendant.ö); *Medina v. Bauer*, No. 02 Civ. 8837 (DC), 2004 WL 136636, at

*6 (S.D.N.Y. Jan. 27, 2004) (õBy lumping all the defendants together and failing to distinguish their

conduct, plaintifføs amended complaint fails to satisfy the requirements of Rule 8. Specifically, the

allegations fail to give adequate notice to these defendants as to what they did wrong. Accordingly,

defendantsø motion to dismiss the amended complaint for failure to state any valid claims against [the

defendants] is granted.ö).

A most recent case on point in this circuit is *Ludwig's Drug Store, Inc. v. Forest City Enterprises,*

*Inc.*, No. 13-CV-6045 (MKB), 2016 WL 915102, at *9-10 (E.D.N.Y. Mar. 4, 2016). There, the Eastern

District of New York  dismissed a complaint under Rule 12(b)(6) because it impermissibly lumped all

the defendants together under common allegations of liability that failed to apprise them of any specific alleged misconduct. The plaintiffs alleged racial discrimination in connection with their use of a spectator suite they rented at the Barclays Center in Brooklyn. Specifically, Plaintiffs alleged that the Defendants harassed the plaintiffs, subjected them to increased security, refused to clean the suite, denied them food and beverage service, and failed to respond properly to maintenance requests. *Id.* at *4-5. Plaintiffs raised these allegations against four defendants, including "Forest," the owner of the arena, and "Compass," the parent company of the arena's catering company, "Levy." Forest and Compass moved to dismiss the claims raised against them on the grounds that the Second Amended Complaint failed "to allege any specific conduct or action by Forest," and "with respect to Compass, ... allege[d] only that Compass is the parent company of Levy." *Id.* at *9. The court agreed, reasoning as follows:

> Rule 8(a) of the Federal Rules of Civil Procedure "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). However, at a minimum the complaint must, "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Id.* (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). This standard is not satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Id.* at 34. Rather, a complaint should provide "specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007*); see In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("Although Plaintiffs argue that they alleged that the [p]arent [c]ompanies were directly involved in the alleged conspiracy, a reading of the complaint indicates otherwise. The complaint alleges direct involvement of the [p]arent [c]ompanies by way of generic references to 'defendants.' This approach is insufficient." (internal citations omitted)).

*Id.* at *10. Further, the court rejected the argument that plaintiffs should be granted the opportunity to conduct a fishing expedition in discovery that might enable them to assert a claim against Forest and Compass.

8

> During the March 30, 2015 Hearing, counsel for both Forest and Compass argued that the [Second Amended Complaint] failed to allege any conduct by Forest or Compass. (Tr. 55:14́18 (Forest); Tr. 49:9́20 (Compass).) In response, Plaintiffs' counsel stated, ӧI don't think [Plaintiffs] were ever aware as to the extent of [Forest's] ... connection ... with [the Arena], and until I am able to do a deposition, I do not believe I can satisfy [the] requirement [of alleging conduct by Forest].ӧ (Tr. 56:19́23.) Given the dearth of any allegations of conduct by Forest or Compass, the Court dismissed all remaining claims against Forest and Compass as insufficiently pled.

*Id.*

Similarly, in a product liability case, the Western District of New York dismissed improperly pled group allegations in *S.F. v. Archer-Daniels-Midland Co.*, No. 13-CV-634S, 2014 WL 1600414, at *6 (W.D.N.Y. April 21, 2014*). Archer-Daniels-Midland* involved a claim that the plaintiff had developed Type 2 diabetes as a result of consuming high-fructose corn syrup. *Id.* at *2. Plaintiff raised identical allegations against five defendants, each of whom manufactured high-fructose corn syrup for use in a variety of food products. The defendants moved to dismiss the complaint arguing that the plaintiff had ӧengaged in impermissible group pleadingӧ that is, making undifferentiated allegations against the defendants as a group without identifying any wrongdoing on the part of any particular defendant.ӧ *Id.* at *5. The court agreed and dismissed the complaint. *Id.* at *6 (citing *Zalewski v. T.P. Builders, Inc.*, No. 1:10-cv-876 GLS/RFT, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) (ӧThe court will not accept ́ vague group pleading to serve as a basis for liability.ӧ); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (ӧGiven the complaintǿs use of the collective term ́Defendantǿ ́ with no distinction as to what acts are attributable to whom,ӧ the complaint must be dismissed); *Atuahene*, 10 F. Appǿx. at 34 (ӧBy lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiffǿs] complaint failed to satisfy [Rule 8ǿs] minimum standard.ӧ)).

Here, Plaintiffs' Complaint fails to differentiate L-3's conduct from any alleged or non-alleged conduct of the other Defendants, and Plaintiff's Complaint therefore should be dismissed. Plaintiffs impermissibly allege that:

- All Defendants, without differentiation, "owed PLAINTIFFS a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of the subject helicopter and its component parts, including the subject helicopter engines, electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto[.]"  DE 46 at ¶ 60;

- All Defendants, without differentiation, owed a further duty "to use reasonable care in the development, production and distribution of instructions for the safe use of the subject helicopter, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter and its component parts and systems, including electrical wires, wire insulation, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including PLAINTIFFS."  *Id.*;

- All Defendants, without differentiation, breached "their aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter and its component parts" and thus proximately caused "the subject crash, injuries, death, and resultant damages."  *Id.* at ¶ 61;

- All Defendants, without differentiation, were negligent in "one or more" of seven specifications of negligence, each primarily focused on the helicopter's wiring and fuel transfer tubes.  *Id.* at ¶ 62;

- All Defendants, without differentiation, defectively designed, manufactured, assembled, tested, inspected, serviced, distributed and sold the subject helicopter and its component parts, and further failed to provide adequate and safe instructions, manuals, cautions, and warnings regarding their use.  *Id.* at ¶ 63; and

- All Defendants, without differentiation, "breached their post-sale duty to adequately warn of and to correct the defective and dangerous conditions in the component and replacement parts for the subject helicopter[.]"  *Id.* at ¶ 65.

*See also* DE 46 at ¶¶ 66-77, 81 (similar group allegations). In short, Plaintiff's Complaint simply raises

and indiscriminately asserts against all Defendants "every type of [tortious] conduct that one could imagine" in a negligence and product liability case arising from this accident. *In re Elevator Antitrust Litigation*, 502 F.3d at 50. Plaintiffs' group allegations are in "entirely general terms without any specification of any particular activities by any particular defendant." *Id*. Looking at these allegations, neither L-3 nor any other Defendant has "adequate notice . . . as to what they [allegedly] did wrong." *Medina*, 2004 WL 136636, at *6. Thus, Plaintiffs have failed to support their claims for relief against L-3 with factual allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

This deficiency in pleading is underscored by the fact that, as noted above, Plaintiffs' Complaint expressly acknowledges that each Defendant played some distinct role in relation to the subject helicopter, and consequently concedes that Plaintiffs' broad allegations of group liability could not possibly apply to each and every Defendant. Specifically, Plaintiff's Complaint itself alleges that "SIKORSKY designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired <u>the subject helicopter</u> and its component parts"; that GE "designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired <u>the engines</u> installed on the subject helicopter . . . and their component parts and systems"; that DuPont acted similarly with respect to the "<u>wiring</u> used in the electrical systems of the subject helicopter"; and that L-3 "inspected, tested, serviced, <u>maintained, overhauled</u> and repaired the subject helicopter and its component parts and systems." DE 46 at ¶¶ 15, 19, 22, 24 (emphases added).

Yet Plaintiffs' allegations of liability ignore these critical distinctions and impermissibly lump all Defendants together. As such, Plaintiff's Complaint does not "permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, by L-3 or any other Defendant because it fails to "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests" as to

11

each of them. *Atuahene*, 10 Fed. App'x at 33; *Ludwig's Drug Store, Inc.*, 2016 WL 915102, at *10; *Robbins*, 519 F.3d at 1250. Because Plaintiffs' Complaint impermissibly engages in group-pleading, asserts identical allegations of liability against L-3 and the other Defendants, and fails to allege facts that provide sufficient notice to apprise L-3 of its or the other Defendants' respective alleged wrongdoing, Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## B. DOHSA PREEMPTS PLAINTIFFS' WRONGFUL DEATH, SURVIVAL, AND EXEMPLARY DAMAGE CLAIMS

The Wrongful Death Plaintiffs assert claims for wrongful death and survival damages relating to the deaths of Van Dorn, Snyder and Collins. DE 46 at ¶¶ 72 – 77. The Wrongful Death Plaintiffs seek pecuniary and non-pecuniary damages, including survival damages, and exemplary or punitive damages, as a part of their wrongful death and survival claims. *Id.* at ¶¶ 72 – 79. However, DOHSA provides the Wrongful Death Plaintiffs with their exclusive remedy in this case, and DOHSA bars the Wrongful Death Plaintiffs' wrongful death and survival claims, as well as their claims for non-pecuniary damages, including punitive damages.

### 1. DOHSA Applies to this Military Aviation Accident

Congress originally enacted DOHSA in 1920 to provide a cause of action for wrongful death on the high seas, beyond a marine league (3 nautical miles) from the shore of any state. 46 U.S.C.App'x. § 761, et seq., enacted March 30, 1920.   Prior to the enactment of DOHSA, those who died at sea were without a cause of action under the common law. As originally enacted, DOHSA permitted a personal representative of the estate of the deceased to maintain a suit where the accident causing the death occurred more than a marine league from the shore of any state. *Id.*; *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 212-217 (1986).

The 1996 crash of TWA Flight 800 approximately 8 miles off the coast of Long Island led to

12

judicial interpretation of the territorial boundaries of DOHSA's application. See *In re Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200 (2d Cir. 2000) (also known as the "*TWA Flight 800 Case*").   In 2000, the TWA Flight 800 crash also led to legislative changes to DOHSA with respect to its application to "commercial" aviation accidents. 46 U.S.C. § 30307.[4]

Thereafter, on October 6, 2006, Congress re-codified and clarified DOHSA's language to more clearly reflect the Congressional intent that DOHSA's application begins beyond three nautical miles from shore. Specifically, in the provision creating the cause of action for wrongful death, Congress replaced the language "a marine league" with "3 nautical miles" from the shore. 46 U.S.C. § 30302. In this re-codification, Congress continued to provide for the exception to DOHSA for "commercial aviation" accidents only, such as TWA Flight 800, occurring 12 nautical miles or closer to the shore of any state. 46 U.S.C. § 30307(c).

In *Helman v. Alcoa Global Fasteners, Inc.*, 637 F.3d 986 (9th Cir. 2011), the Ninth Circuit more recently interpreted DOHSA's territorial boundaries for military and other non-commercial aviation accidents. *Helman* discussed and analyzed the Second Circuit's earlier DOHSA interpretation in the *TWA Flight 800 Case* in view of Congress's subsequent amendments to DOHSA. In *Helman*, the plaintiffs, personal representatives of three United States Navy crewman who died in the crash of a Navy helicopter 9.5 nautical miles offshore, asserted product liability claims seeking damages for wrongful death against a number of defendants. In granting the defendants' motions to dismiss the plaintiffs' wrongful death claims, the court concluded that "DOHSA applies to all waters beyond three nautical miles from United States shores," finding the military helicopter crash in that case to be governed by

---

[4] The amendment, signed into law on April 5, 2000, provided that DOHSA "does not apply if the death resulted from a commercial aviation accident occurring on the high seas 12 nautical miles or less from the shore of the United States."

DOHSA. See *Helman*, 637 F.3d at 993. The Court based its holding on two main points. First, the 2006 DOHSA amendment replacing "a marine league" with "3 nautical miles" reinforced Congressional intent for DOHSA to apply beyond three, not twelve, nautical miles in view of the fact that the amendment came after President Reagan's proclamation extending the United States' territorial sea to 12 nautical miles.   Second, Congress's 12 nautical mile exemption for commercial aviation crashes only, made retroactive to the day before the TWA Flight 800 crash occurred, reflected Congressional intent for DOHSA to apply starting at 3 nautical miles for all other types of incidents, aviation or otherwise. *Id*. at 990-91.

It is undisputed in this case that the accident and crash of the helicopter at issue occurred in the Atlantic Ocean, at position N 36 59.2, W 75 37.4, approximately 18 nautical miles east of Cape Henry Lighthouse, Virginia Beach, Virginia, and well beyond three nautical miles from the nearest shore. DE 43, Rule 26(f) Report pp. 5, 10. Accordingly, based upon the location of the accident at issue, the action brought by the Wrongful Death Plaintiffs falls within the scope of DOHSA.

Further, DOHSA applies to deaths resulting from aircraft crashes on the high seas, and, more specifically, the crash of a Navy helicopter in this case. See *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 263-264, 268 (1972); *Friedman v. Mitsubishi Aircraft International, Inc.*, 678 F. Supp. 1064, 1065 (S.D.N.Y. 1988). While Section 30307(c) of DOHSA provides a limited exception for commercial aviation accidents, providing that it does not apply to commercial aviation accidents occurring within 12 nautical miles of shore, there is no comparable provision of DOHSA providing an exception for military or other non-commercial aviation accidents.

As expressly held by the *Helman* Court, DOHSA applies to military aviation accidents occurring more than three nautical miles from the shore. *Helman*, 637 F.3d 986, 993 (9th Cir. 2011). For all these

reasons, there is no doubt that DOHSA applies to the claims alleged by the Wrongful Death Plaintiffs in the First Claim.[5]

2. <u>DOHSA Preempts Wrongful Death and Survival Claims</u>

DOHSA provides a cause of action for "the death of a person … caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shores of the United States." 46 U.S.C. § 30302. An action under DOHSA must be brought by the decedent's personal representative "for the exclusive benefit of the decedent's spouse, husband, parent, child or dependent relative." *Id.* DOHSA preempts state law actions and provides the exclusive remedy for deaths on the high seas covered by its provisions. 46 U.S.C. § 30302; *Dooley v. Korean Airlines, Co.,* 524 U.S. 116, 123-124 (1998). DOHSA entirely supplants causes of action for wrongful death and survival damages permitted under state law, common law, or general maritime law. *Dooley*, 524 U.S. at 122-124. In *Dooley*, the United States Supreme Court unequivocally held that DOHSA does not permit a plaintiff seeking relief for a death on the high seas to bring a suit for wrongful death under state law or general maritime law. *Dooley*, 524 U.S. at 122. See also, *Kopperi v. Sikorsky Aircraft Corp., Inc*., 2009 WL6919972 (D. Conn.

---

[5] The helicopter crash in this case occurred on the high seas. That Plaintiffs allege prior negligent or wrongful acts or omissions ashore which purportedly resulted in the crash, or that some of Plaintiffs' decedents survived after the crash and died ashore, has no relevance to DOHSA's application to the Wrongful Death Plaintiffs' claims in this case. A cause of action under DOHSA accrues at the time and place where an allegedly wrongful act consummates in an actual injury. *See Brown v. Eurocopter, S.A.*, 38 F.Supp. 2d 515 (S.D. Texas 1999) (DOHSA applied where mechanical problems of helicopter manifested in the crash of helicopter on the high seas); *Lasky v. Royal Caribbean Cruises, Ltd.*, 890 F.Supp. 2d 1309 (S.D. Fla. 2012) (DOHSA applied where decedent slipped and fell while his ship was at sea and later died ashore from complications of the fall); *Moyer v. Rederi*, 645 F.Supp. 620 (S.D. Fla. 1986) (DOHSA applied where decedent's heart symptoms began on the high seas and later culminated in a heart attack ashore).

Sept. 2, 2009).

The only damages potentially recoverable under DOHSA are pecuniary damages for the loss of a decedent's support. See *Dooley*, 524 U.S. at 121-123. Therefore, DOHSA bars the survival actions and survival damages asserted by the Wrongful Death Plaintiffs in this case. *Id*. at 121-122. DOHSA also bars claims for non-pecuniary losses such as loss of society, loss of services, mental anguish, fear of impending death, pain and suffering and other similar non-pecuniary damage allegations. *Id*. (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622-624 (1978). Punitive or exemplary damages also are not available or recoverable under DOHSA. *Bergen v. F/V St. Patrick*, 816 F. 2d 1345, 1347 (9th Cir. 1987). Further, the pecuniary damages that can be recovered under DOHSA may not be supplemented by general maritime law non-pecuniary damage claims or state law non-pecuniary damage claims. *Mobil Oil Corp*., 436 U.S. at 624-625; *see also Offshore Logistics, Inc. v. Tallentire*, 447 U.S. 207, 232 (1986).

Here, DOHSA indisputably dictates the scope of remedies available to the Wrongful Death Plaintiffs in this action. The Wrongful Death Plaintiffs appear to allege state law and/or maritime theories of liability sounding in negligence, strict product liability, failure to warn, and breach of express or implied warranties, all of which attempts to assert causes of action for Plaintiffs' decedents' deaths on the high seas. DE 46 at ¶¶ 72 – 77. The Wrongful Death Plaintiffs also seek survival, non-pecuniary, pecuniary, and exemplary damages for losses resulting from this military helicopter crash occurring approximately 18 nautical miles from shore. *Id.* at ¶¶ 72 – 79. DOHSA preempts all of these damage claims, and provides the exclusive remedy for the Wrongful Death Plaintiffs' claims.  Because the Wrongful Death Plaintiffs have not plead a claim under DOHSA, and because they have asserted claims for various forms of survival, non-pecuniary, and exemplary damages, the Court should dismiss the Wrongful Death Plaintiffs' action, without prejudice to permit Plaintiffs to amend their Complaint to

correctly seek their exclusive relief available under DOHSA.

**C. PLAINTIFFS FAIL TO STATE LEGALLY RECOGNIZABLE CLAIMS FOR PRODUCT LIABILITY UNDER MARITIME LAW**

Although Plaintiffs allege that L-3 "inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems"; DE 46 at ¶ 24; Plaintiffs also allege product liability claims as to L-3; *Id.* at ¶¶ 61 – 77; and as to all Defendants without differentiation. *Id.* However, all Plaintiffs' claims sounding in product liability, including those alleged by Plaintiff Boone, fail to state a claim under maritime law upon which relief can be granted, because the subject U.S. Navy helicopter is not a "product" under federal maritime law.

1. Federal Maritime Law Alone Governs Plaintiffs' Claims

All Plaintiffs' claims in this case fall within the admiralty jurisdiction of the Court. 28 U.S.C § 1333. Indeed,   Plaintiffs all plead admiralty jurisdiction in their Complaint. DE 46 at ¶ 25. At the time of the accident, Plaintiffs' decedents and Plaintiff Boone all were U. S. Navy service members onboard a MH-53E, U.S. Navy Helicopter, performing airborne mine counter measure training. *Id.* at ¶¶ 1,4, 7, 10, 28-35.

Plaintiffs allege that the accident and injuries occurred on navigable waters off the coast of Virginia. *Id.* at ¶ 25. As discussed above, it is undisputed that the location of the accident was in the Atlantic Ocean, at position N 36 59.2, W 75 37.4. This position is approximately 18 nautical miles east of Cape Henry Lighthouse, Virginia Beach, Virginia, beyond the navigable waters of the United States, and on the high seas.[6] Because of the location of the accident in this case on or beyond the navigable

---

[6] With respect to maritime jurisdiction generally (as opposed to DOHSA), the phrase "high seas" is defined as the area beyond the jurisdiction of any particular state. *See Hellman v. Alcoa Global Fasteners, Inc.*, 637 F.3d 986, 990 (9th Cir. 2011) (including historical citations).

waters of the United States, and on the high seas, as well as the nexus of the helicopter accident to traditional maritime activities, admiralty jurisdiction and federal maritime law apply. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986); *see also Friedman v. Cunard Line Limited*, 996 F. Supp. 303, 307 (S.D.N.Y. 1998) (relying upon *East River Steamship Corp v. Transamerica Delaval, Inc*., 476 U.S. 858, 864 (1986), and also questioning whether a maritime nexus is even required to invoke maritime jurisdiction when the accident takes place on the high seas as opposed to simply in navigable waters).

Further, because Plaintiffsø claims fall within admiralty jurisdiction, maritime law governs all their claims. õWith admiralty jurisdiction comes the application of substantive admiralty law.ö *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) (applying federal maritime law to product liability); *In re Horizon Cruises Litigation*, 101 F.Supp.2d 204, 207 (S.D.N.Y. 2000) (applying federal maritime law to negligence and product liability claims).

In contrast, state law does not apply to any of Plaintiffsø claims. It matters not that Plaintiffs allege federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, as well as admiralty jurisdiction. õWhere a tort falls within admiralty jurisdiction, the general maritime law applies, even if the plaintifføs complaint pleaded diversity of citizenship as the sole basis for subject matter jurisdiction.ö *Friedman v. Cunard Line Limited*, 996 F. Supp. 303, 305 (S.D.N.Y. 1998); *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084 (2d Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994)).[7]

---

[7] Similar to the discussion in Fn. 4 above with respect to DOHSA, the fact that some of Plaintiffsø resulting injuries may have manifested later ashore, after the crash on the high seas, is immaterial to the issue of whether maritime or state law applies. 46 U.S.C. § 30101(a) provides:

> The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damages is done or consummated on land.

In *Wahlstrom*, the plaintiff died in a boating accident on the Thames River, (navigable waters of the State of Connecticut), the plaintiffs plead diversity jurisdiction only, and asserted Connecticut state law personal injury claims. Nevertheless, the Second Circuit Court of Appeals held: "federal maritime law, rather than Connecticut law, must be applied in the present case." *Wahlstrom*, 4 F.3d at 1089. In the instant case, the accident happened in the Atlantic Ocean, approximately 18 nautical miles east of Cape Henry Lighthouse, Virginia Beach, Virginia, well outside the three mile seaward boundary of the Commonwealth of Virginia and its state territorial jurisdiction.[8]   Accordingly, the only law which could be applied in this case is federal maritime law. Cf. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996) (state law based claim not preempted by federal maritime law where the accident occurred in state territorial waters).

      2.  <u>Plaintiffs May Not Assert a Product Liability Claim Against L-3 Under Maritime Law.</u>

The law of product liability is recognized as part of general maritime law. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986). In crafting the law of product liability under federal maritime law, courts look to the Restatement of Torts for guidance. See *Saratoga Fishing Company v. J. M. Martinac & Company*, 520 U.S. 875, 879 (1997). For purposes of a product liability claim, the Restatement (Third) of Torts, § 19(a) defines a "product" as "tangible personal property

---

See also, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company*, 513 U.S. 527, 530-536 (1995) (history of 46 U.S.C. § 30101); *In re Horizon Cruises Litigation*, 101 F.Supp.2d 204, 207-210 (S.D.N.Y. 2000) (maritime law applied to negligence and product liability claims of cruise ship passengers whose illness manifested itself later ashore).

[8]  The seaward boundary of the Commonwealth of Virginia, and every other state except Texas and Florida's west coast (and Puerto Rico), is three geographical miles distant from its coast line. See 43 U.S.C. § 1312; *Ocean Blue Print for the 21st Century, Primer on Ocean Jurisdictions: Drawing Lines in the Water*, U.S. Commission on Ocean Policy (July 22, 2004).

distributed commercially for use or consumption.ö[9]  As discussed below, a U.S. Navy helicopter is not

such a öproductö under federal maritime law.

The MH-53E helicopter at issue was purchased by the U.S. Navy pursuant to a government

contract and specifications promulgated by the United States military, primarily for airborne mine

countermeasure operations. Plaintiffs allege that the Subject Helicopter in this case was purchased by,

and delivered to, the U. S. Navy in 1990. DE 46 at ¶¶ 28-30.


A U. S. Navy helicopter is analogous to a U. S. Navy warship. Both the aircraft and the warship

are operational platforms built for use by the U.S. Navy in support of its national defense mission.

§ 0204, U. S. Navy Regulations, 1990. Both the aircraft and the warship are constructed pursuant to strict

contractual requirements and specifications of the U. S. government. A Navy helicopterøs airframe, like

a Navy warshipøs hull, contains many thousands of component parts, many of which are designed and/or

manufactured by various contractors. A U. S. Navy helicopter, like a U. S. Navy warship, is not

distributed commercially for use or consumption. Rather, it is procured by the government to meet

precise military specifications, for the purpose of providing the government with the capability for

sustained combat operations at sea. § 0202, U. S. Navy Regulations, 1990. Once received, both the Navy

helicopter and the Navy warship are manned by a crew of military service members, under the authority

---

[9]  Restatement (Third) of Torts, § 19(a) provides:

> (a)  A product is tangible personal property distributed commercially for use or consumption.
> Other items, such as real property and electricity, are products when the context of
> distribution and use is sufficiently analogous to the distribution and use of tangible personal
> property that is appropriate to apply the rules stated in this Restatement.
> (b)  Services, even when provided commercially, are not products.
> (c)  Human blood and human tissue, even when provided commercially, are not subject to the
> rules of this Restatement.

of a U. S. Navy commanding officer, who is tasked with the overall responsibility for its proper repair, maintenance and operation. § 0834, U. S. Navy Regulations, 1990. Simply put, the procurement process, construction process, purpose and utilization of a Navy helicopter is completely comparable to that of a Navy warship.

Until very recently, no appellate authority had examined the specific issue of whether or not the manufacturer of a either a U. S. Navy warship or a U.S. Navy helicopter could be held liable under federal maritime product liability law.[10] However, on March 31, 2016, the Eighth Circuit Court of Appeals released its decision in *McIndoe v. Huntington Ingalls Incorporated*, 2016 WL 1253903, __ F.3d. __ (8th Cir.   March 31, 2016), holding that naval warships are not "products" for product liability purposes under federal maritime law.

In *McIndoe*, the plaintiff's decedent husband had served in the Navy aboard two U. S. Navy ships: USS CORAL SEA (CV-43) and USS WORDEN (CG-18). The plaintiff alleged that while serving

_____

[10] Prior to 2016, only one case can be located which attempted to deal with the issue of whether a Navy ship is a product under maritime law. In *Mack v. General Electric Company*, 896 F.Supp.2d 333 (E.D.Pa. 2012), the Eastern District of Pennsylvania was presented with what it described as an issue of first impression: whether a Navy ship was a "product" for the purposes of a product liability claim under maritime law. The plaintiff in *Mack* alleged that he was exposed to asbestos while aboard various Navy ships while employed as a welder, and as a result he brought negligence and product liability claims against a variety of defendants, including the shipbuilders. The shipbuilder defendants moved for summary judgment on the grounds, among others, that a Navy ship is not a product to which product liability theory applies. After determining that the plaintiffs' claims were subject to maritime law, the court examined the issue of whether a Navy ship was a product, and held: "the Court concludes today that a ship is not a 'product' with the meaning of strict product liability law." *Id.* at 345. *But see Hassenbrock v. Air & Liquid Systems Corp.*, 2015 WL 5883403 (W.D.Wa. 2015) (a non-federal maritime law case disagreeing with rational of *Mack*). Other cases have dealt with the issue of whether military hardware utilized by soldiers are products for the purpose of a product liability claim. However, none of those cases involved large, manned weapon platforms such as ships or aircraft, which themselves contain thousands of component parts, nor were those cases guided by, or did they purport to interpret, federal maritime law. *See, e.g., Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867 (8th Cir. 1974) (hand grenade analyzed under Iowa law); *Rodriguez v. General Dynamics Armament and Technical Products, Inc.*, 696 F.Supp.2d 1163 (D. Hawaii 2010) (mortar analyzed under Hawaii law).

on both ships, the decedent was exposed to asbestos pipe insulation, which in turn caused him to him

contract, and ultimately die from complications of, mesothelioma. The plaintiff brought suit against the

defendants under a product liability theory for alleged defective design, manufacturing and failure to

warn theories, as well as under an ordinary negligence theory. The District Court granted the defendants

summary judgment on the grounds that U. S. Navy ships are not products for the purposes of a strict

liability product liability claim.[11]

The Eighth Circuit, in its *de novo* review of the District Court's ruling, noted initially, citing *East*

*River Steamship Corp v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986), that federal maritime

law governed the case. *McIndoe*, 2016 WL 1253903,  __ F.3d. __ at *1.   The Court then framed the

issue in the case as:

> The Supreme Court has recognized that federal maritime law incorporates actions for products
> liability, including those that sound in strict liability. The question is whether a naval warship is
> to be considered a "product" in this context, appears to be one of first impression for the federal
> courts of appeals. [Internal citations omitted].

*Id*. at *2. The Eighth Circuit noted that, in analyzing product liability claims under maritime law, the

federal courts will look to the Restatement of Torts, and particularly the Third Restatement. *McIndoe*,

2016 WL 1253903, __ *F.3d.* __, at *2; *see also Oswalt v. Resolute Industries, Inc.*, 642 F.3d 856, 860

(9th Cir. 2011); *Saratoga Fishing Company v. J. M. Martinac & Company*, 520 U.S. 875, 879 (1997).

The Court then went on to note that:

> The Third Restatement defines a "product" subject to strict liability as "tangible personal

---

[11] A "strict product liability" claim under federal maritime law includes theories of liability against a seller or distributor based upon a manufacturing defect, a design defect or a failure to warn theory. Restatement (Third) of Torts, § 2; *Connor v. Alfa Laval, Inc.*, 842. F.Supp.2d 791, 796 (E.D.Pa. 2012) (strict product liability under maritime law includes theories based upon manufacturing defects, design defects and inadequate warnings). Breach of warranty, on the other hand, is not a separately recognizable cause of action under maritime law. *Dietrich v. Honeywell, Inc.*, 491 F.Supp. 269, 271-272 (D. Conn. 1980), *aff'd,* 679 F.2d 874 (2d Cir. 1981).

property *distributed commercially* for use or consumption. Restatement (Third) of Torts; Prods. Liab. § 19(a) (Am. Law Inst. 1998) (emphasis added). "[O]nly when the complained-of injury was allegedly caused by a defect in something within this definition of 'product' should the defendant manufacturer or seller be strictly liable for the harm caused." *Id.* § 19 reporter's note, cmt. A. Injuries caused by other items are actionable only "under negligence, misrepresentation, or some other liability theory." *Id.*

*McIndoe*, 2016 WL 1253903, __ F.3d. __, at *2.

Analyzing the Restatement (Third) of Torts, the Eighth Circuit concluded that warships, because they are not "distributed commercially", are excluded from the realm of strict product liability. *Id.* at *2. Accordingly, the *McIndoe* Court held that the plaintiff in that action could not sustain an action for strict product liability under maritime law. Rather, the plaintiff's only recourse was a claim sounding in ordinary negligence. *Id.* at *3.

Even if the facts of this case could support a product liability claim against L-3, for the same reasoning as set forth in *McIndoe*, Plaintiffs should not be able to maintain a cause of action against L-3 or any Defendant based upon a product liability theory in the instant case. There exist no relevant distinctions between a Navy warship and a Navy helicopter that would lead to the conclusion that the latter, but not the former, is a "product" under general maritime law. Both are constructed pursuant to government contractual requirements and government specifications. Both contain thousands of components, many of which are designed and/or manufactured by others. Neither is produced "commercially for use or consumption", but instead both are weapons platforms produced for the government so that it may conduct sustained combat operations at sea.

The Supreme Court, in fashioning maritime product liability law, has recognized that the general goal of product liability law is to place responsibility on the party most able to prevent harm caused by dangerous products, and thus to incentivize proper design and quality control for such products. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865, 866 (1986). As well explained

by the Eighth Circuit Court of Appeals in *McIndoe*, this goal would be advanced little by imposing product liability on the builder of a U.S. Navy helicopter or components manufacturers, and no more so than it would be advanced by imposing such liability on the builder of a U.S. Navy warship and its components. The Navy helicopter and components manufacturers, like the builder of a Navy warship and its components, delivering an operational weapon platform built to government contract specifications have little ability to account (both in control and/or in pricing) for the virtual unlimited liability that would flow from a rule holding them strictly liable for the dangers presented by any and all of the government-specified components within its airframe. See *McIndoe*, 2016 WL 1253903, __ F.3d. __, at *2. Similarly, the military helicopter and components manufacturer have little ability to account for the virtually unlimited liability that would flow from a rule holding them strictly liable for the inherent dangers associated with military flight operations. Certainly, "the smooth flow of maritime commerce," which is the primary goal of federal maritime law, would neither be protected nor promoted by "such a sweeping grant of liability." *Id.* at *3.

Because the MH 53E helicopter at issue was not produced "commercially for use or consumption," the Subject Helicopter is not a "product" under federal maritime product liability law. Accordingly, Plaintiffs' claims in this case, which seek to impose liability upon L-3 or any other Defendant based upon "failure to warn," alleged "unreasonably dangerous and defective products," and breach of warranty theories, fail to state claims upon which relief can be granted. Therefore, Plaintiffs' product liability claims must be dismissed.

### D. PLAINTIFFS' JURY TRIAL DEMAND SHOULD BE STRICKEN

Lastly, pursuant to Fed. R. Civ. P. Rule 12(f), L-3 moves to strike Plaintiffs' Jury Demand. DE 46 at p. 22.   *See, e.g.*, *Heath v. American Sail Training Association*, 644 F.Supp. 1459, 1462 (D.R.I.

1986); *McAleer v. Smith*, 791F.Supp. 923, 930-931 (D.R.I. 1992).

It has been recognized from early times that there is no right to a jury trial with respect to cases falling under the admiralty jurisdiction of the Court.   *Waring v. Clarke*, 46 U.S. 441, 460 (1847). The weight of authority since supports the proposition that Plaintiffs are not entitled to a trial by jury of their claims in this matter. The Seventh Amendment right to a jury trial does not require jury trials in admiralty cases, nor does any federal statute. *Fitzgerald v. United States Line Co.*, 374 U.S. 16, 20 (1963). And, ordinarily, cases brought within admiralty jurisdiction are tried to the Court. *Kathriner v. Unisea, Inc.*, 740 F.Supp. 768, 769 (D. Alaska 1990) (citing *Fitzgerald* and *Waring*).

Specifically with respect to DOHSA claims, although DOHSA legislation is silent on the issue of whether or not claims under that legislation may be tried by a jury, DOHSA claims lie in admiralty, and therefore are not generally tried to a jury. See *Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 481 (N.D. Cal. 1987). It appears that federal courts have permitted jury trials in DOHSA cases only under two exceptions. The first exception is where the plaintiff maintains a non-DOHSA claim that carries a right to a trial by jury, arising out of the same transaction or occurrence. *See, e.g., Peace v. Fidalgo Island Packing Co*, 419 F.2d 371, 372 (9th Cir. 1969); *In re Korean Lines Disaster of September 1, 1983*, 704 F.Supp. 1135, 1152-53 (D.D.C. 1988). Second, some courts have allowed jury trials where, in addition to asserting a DOHSA claim, a plaintiff also asserts another claim that does not necessarily entitle him or her to a jury trial, but which involves the diversity jurisdiction of the court. *See, e.g., In re Korean Lines Disaster of September 1, 1983*, 704 F.Supp. 1135, 1156 (D.D.C. 1988). However, where a plaintiff asserts only a cause of action which is properly governed by DOHSA, and diversity simply creates an additional basis for federal jurisdiction and no additional substantive rights upon which the claim is based, then the plaintiff is not entitled to a jury trial. *Lasky v. Royal Caribbean Cruises, Ltd*., 850 F.Supp.

2d 1309, 1313-1314 (S.D. Fla. 2012); *Friedman v. Mitsubishi Aircraft Int'l, Inc*., 678 F.Supp. 1064, 1066, n.5 (S.D.N.Y. 1988); *but see Kathriner v. Unisea, Inc*., 740 F.Supp. 768, 769 (D. Alaska 1990).

In the present case, as discussed above, the claims of the Wrongful Death Plaintiffs are solely governed by DOHSA. There is no other recognizable cause of action that the Wrongful Death Plaintiffs may assert. The Wrongful Death Plaintiffs allege diversity jurisdiction as well as admiralty jurisdiction, however, the claim for diversity neither asserts nor creates any additional substantive rights upon which their claim is based. Accordingly, the jury demand by the Wrongful Death Plaintiffs should be stricken.

As also discussed more fully above, Plaintiff Boone's personal injury claim, while not governed by DOHSA, nevertheless falls under the admiralty jurisdiction of the Court, and is governed solely by maritime law. For this reason, Plaintiff Boone's jury claim also should be stricken. See *Mayer v. Cornell University*, 909 F.Supp. 81, 85 (N.D.N.Y. 1995) (where the only other claim joined with a DOHSA claim is admiralty based there is no right to a jury trial); *but see Favaloro*, 687 F.Supp. at 481.

## IV.   **CONCLUSION**

Wherefore, for the reasons, points and authorities set forth above, the Plaintiffs' Second Amended Complaint should be dismissed as to L-3 for failure to state claims upon which relief may be granted.

Respectfully submitted,

DEFENDANT
L-3 COMMUNICATIONS CORPORATION

BY   /s/ Steven E. Arnold_____
           Steven E. Arnold   ct07966
           sea@salaw.us
           SA Law, P.C.
           8 Whittier Place, Suite 14F
           Boston, MA 02114
           (617) 670-0868
           Its Attorneys

## **CERTIFICATION**

I certify that on May 19, 2016 a copy of the foregoing was filed electronically and served by regular mail, postage prepaid, on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

         ___/s/ Steven E. Arnold_____
           Steven E. Arnold