UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Nicole Van Dorn, as surviving spouse and Personal
Representative of the Estate of LT. J Wesley Van Dorn,
USN, deceased;

Amy Snyder, as surviving spouse and Personal
Representative of the Estate of LT. Sean Christopher
Snyder, USN, deceased;

Cheyenne Collins, as surviving spouse and Personal
Representative of the Estate of Petty Officer 3rd Class
Brian Andrew Collins, USN, deceased; and

Petty Officer 2nd Class Dylan Morgan Boone, USN,

                  Plaintiffs,

  - against -

Sikorsky Aircraft Corporation; Sikorsky Support Services,
Inc., dba Sikorsky Aerospace Services; General Electric
Company; E.I. du Pont de Nemours and Company; and
L-3 Communications Corporation,

             Defendants.

**Docket No. 3:15-cv-01877-AWT**

**THIRD AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiffs, by and through their attorneys, KREINDLER & KREINDLER LLP, respectfully allege:

**PLAINTIFFS**

1. On January 8, 2014, LT. J WESLEY VAN DORN, USN (hereinafter "VAN DORN") was on active duty in the United States Navy and the pilot of a Sikorsky MH-53E Sea Dragon helicopter, Bureau Number (BUNO) 163070, call sign Vulcan 543 (hereinafter "subject helicopter"), which crashed approximately eighteen miles off the coast of Virginia Beach,

Virginia, at approximately latitude N. 26 59.2 longitude W. 75 37.4. VAN DORN was killed as a result of the crash of the subject helicopter.

2.   Plaintiff NICOLE VAN DORN is the duly appointed Personal Representative of the Estate of LT. J Wesley Van Dorn, and she brings this action in her individual capacity as the surviving spouse of VAN DORN, in her representative capacity as the Personal Representative of the Estate of LT. J Wesley Van Dorn and on behalf of the decedent's two natural infant children, surviving parents, siblings and next of kin. NICOLE VAN DORN was appointed Personal Representative of the Estate of LT. J Wesley Van Dorn in Virginia Beach, Virginia, on December 17, 2015.

3.   At the time of his death, VAN DORN was a citizen of Virginia.

4.   On January 8, 2014, LT. SEAN CHRISTOPHER SNYDER, USN (hereinafter "SNYDER") was on active duty in the United States Navy and was the co-pilot of the subject helicopter. SNYDER was killed as a result of the crash of the subject helicopter.

5.   Plaintiff AMY SNYDER is the duly appointed Personal Representative of the Estate of LT. Sean Christopher Snyder, and she brings this action in her individual capacity as the surviving spouse of SNYDER, in her representative capacity as the Personal Representative of the Estate of LT. Sean Christopher Snyder and on behalf of the decedent's four natural infant children, surviving parents, siblings and next of kin. AMY SNYDER was appointed Personal Representative of the Estate of LT. Sean Christopher Snyder in Virginia Beach, Virginia, on December 17, 2015.

6.   At the time of his death, SNYDER was a citizen of Virginia.

7.   On January 8, 2014, Petty Officer 3rd Class BRIAN ANDREW COLLINS, USN (hereinafter "COLLINS") was on active duty in the United States Navy and was an aircrewman

on board the subject helicopter.  COLLINS was killed as a result of the crash of the subject helicopter.

8.     Plaintiff CHEYENNE COLLINS is the duly appointed Personal Representative of the Estate of Petty Officer 3rd Class Brian Andrew Collins, and she brings this action in her individual capacity as the surviving spouse of COLLINS, in her representative capacity as the Personal Representative of the Estate of Petty Officer 3rd Class Brian Andrew Collins and on behalf of the decedent's surviving parents, siblings and next of kin.  CHEYENNE COLLINS was appointed as Personal Representative of the Estate of Petty Officer 3rd Class Brian Andrew Collins in Norfolk, Virginia, on December 16, 2015.

9.     At the time of his death, COLLINS was a citizen of Virginia.

10.    On January 8, 2014, Plaintiff Petty Officer 2nd Class DYLAN MORGAN BOONE, USN, (hereinafter "BOONE") was on active duty in the United States Navy and was an aircrewman on board the subject helicopter.  BOONE was seriously and permanently injured as a result of the crash of the subject helicopter.

11.    BOONE is a citizen of Colorado.

12.    The VAN DORN, SNYDER and COLLINS plaintiffs bring this action to recover all damages available under the Death on the High Seas Act, 46 U.S.C. §30301 *et seq*., and any other applicable laws.

13.    Plaintiff BOONE brings this action to recover all damages allowable under General Maritime Law and any other applicable laws.

**DEFENDANTS**

14. At all relevant times herein, Defendant SIKORSKY AIRCRAFT CORPORATION (hereinafter "SIKORSKY") was and is a Delaware corporation with its principal place of business in Stratford, Connecticut.

15. At all relevant times herein, Defendant SIKORSKY SUPPORT SERVICES, INC. (dba Sikorsky Aerospace Services) (hereinafter "SIKORSKY AEROSPACE") was and is a Delaware corporation with its principal place of business in Stratford, Connecticut. SIKORSKY AEROSPACE is a wholly-owned subsidiary of SIKORSKY.

16. At all times herein mentioned, defendants SIKORSKY and SIKORSKY AEROSPACE, and each of them, and their aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees, permissive users, successors in interest or joint venturers of each other, and were acting within the time, purpose or scope of such agency or employment or permission, and all acts or omissions alleged herein of each such Defendant and its agents, servants, employees, assignees, permissive users, successor in interest or joint venturers were authorized, adopted, approved or ratified by each of the other Defendants named herein.

17. Defendant SIKORSKY designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems, including but not limited to, the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, prepared, wrote, approved and/or sold warnings, instructions and guidance for the use of the subject helicopter, including the use of its electrical systems, wiring and wire insulation, fasteners and ties, and fuel systems, including its

fuel lines, fuel transfer tubes, fasteners and ties, and also prepared, wrote, approved and/or sold instructions and warnings for the subject helicopter and its component parts and systems including, but not limited to, its flight manual, maintenance manual, maintenance instructions, service bulletins, inspection schedules and service life schedules.

18. Defendant SIKORSKY AEROSPACE inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and systems, including, but not limited to, the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties.

19. At all relevant times herein, Defendant GENERAL ELECTRIC COMPANY (hereinafter "GE") was and is a New York corporation with its principal place of business in Fairfield, Connecticut.

20. At all times herein mentioned, Defendant GE, its aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees, permissive users, successors in interest or joint venturers of each other, and were acting within the time, purpose, or scope of such agency or employment or permission, and all acts or omissions alleged herein of each such Defendant and its agents, servants, employees, assignees, permissive users, successor in interest or joint venturers were authorized, adopted, approved, or ratified by each of the other Defendants named herein.

21. Defendant GE, individually and in coordination with defendant SIKORSKY, designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the engines installed on the subject helicopter ("subject helicopter engines") and their component parts and systems, including, but not limited to the subject

helicopter engines' electrical systems, including their wiring and wire insulation, fasteners and ties, and the subject helicopter engines' fuel systems, including their fuel lines, fuel transfer tubes, fasteners and ties, prepared, wrote, approved and/or sold warnings, instruction and guidance for the use of the subject helicopter engines, including the use of their electrical systems, their wiring and wire insulation, fasteners and ties, and fuel systems, and their fuel lines, fuel transfer tubes, fasteners and ties, and also prepared, wrote, approved and/or sold instructions and warnings for the subject helicopter engines and their component parts and systems  including, but not limited to, their maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules.

22.   At all relevant times herein, Defendant E.I. DU PONT DE NEMOURS AND COMPANY (hereinafter "DUPONT") was and is a Delaware corporation with its principal place of business in Wilmington, Delaware, and was and is engaging in continuous and systematic contacts with the State of Connecticut.  DUPONT has qualified as a foreign corporation to conduct business in Connecticut and has appointed an agent in Connecticut for service of process.  DUPONT represents on its webpage that it maintains a "location" in Bridgeport, Connecticut, DUPONT, Global Locations, *see* Appendix A, conducts millions of dollars of business in Connecticut, regularly and systematically solicits business and the sale and distribution of DUPONT products in Connecticut and has availed itself of the benefits, privileges, and protections of Connecticut law in respect to its business operations in Connecticut.

23.   At all times herein mentioned, Defendant DUPONT, and its aggregates, associates, and partners, and each of them, were the agents, servants, employers, assignees, permissive users, successors in interest or joint venturers of each other, and were acting within

the time, purpose, or scope of such agency or employment or permission, and all acts or omissions alleged herein of each such Defendant and its agents, servants, employees, assignees, permissive users, successor in interest or joint venturers were authorized, adopted, approved, or ratified by each of the other Defendants named herein.

24. Defendant DUPONT, individually and in coordination with defendants SIKORSKY and GE, designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, overhauled and repaired the wiring used in the electrical systems of the subject helicopter, including its wiring and wire insulation, fasteners and ties, and prepared, wrote, approved and/or sold warnings, instruction and guidance for the wiring used in the electrical systems of the subject helicopter, and also prepared, wrote, approved and/or sold instructions and warnings for the maintenance, inspection, repair and replacement of the wiring used in the electrical systems of the subject helicopter, including but not limited to, maintenance manuals, maintenance instructions, service bulletins, airframe changes, inspection schedules and service life schedules.

25. Upon information and belief, this Court is constitutionally permitted to exercise personal jurisdiction in respect to Defendant DUPONT in this matter for the following reasons:

    a. Pursuant to an ongoing contractual or business relationship with Connecticut Defendants SIKORSKY and GE, Defendant DUPONT:

        1. Transacted business within the State of Connecticut by designing, manufacturing, assembling, testing, inspecting, servicing, distributing and selling Kapton products, including wiring that was installed in the subject helicopter within the State of Connecticut which was unreasonably

dangerous and unsafe by reason of defective design, manufacture, assembly, testing, inspection, service, distribution or sale.

2. Committed a tortious act in coordination with Connecticut companies SIKORSKY and GE within the State of Connecticut by designing, manufacturing, assembling, testing, inspecting, servicing, distributing and selling Kapton wiring that was installed in the subject helicopter in the State of Connecticut and which unreasonably dangerous and unsafe by reason of defective design, manufacture, assembly, testing, inspection, service, distribution or sale.

b. Further, the subject crash arose out of and is related to the Connecticut activity of Defendant DUPONT; specifically, the subject crash was caused, in part, by premature deterioration and failure of Kapton wiring which, upon information and belief, was designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and installed in the subject helicopter by Defendant DUPONT in the State of Connecticut.

c. Further, upon information and belief, Defendant DUPONT through its employees and agents, invented and developed a polyimide film material, marketed under the trade name Kapton, or Kapton K, at its laboratories and facilities located throughout the United States and in part in the State of Connecticut by personnel, employees and agents living and working in Connecticut.

d. Defendant DUPONT, through its employees and agents, patented and marketed Kapton, and other products such as Teflon, to businesses and persons in Connecticut and for use in products located in Connecticut, including use as

electrical wiring insulation, heat insulation, and similar applications in Connecticut, subjecting persons and property in Connecticut to damage and injury and risk of damage and injury related to the malfunctioning, premature deterioration, premature disintegration, premature degradation and poor resistance to wear and tear, as well as other means of underperformance of Kapton as an insulation material.

e. Defendant DUPONT, through its employees and agents, became aware of hazards, limitations, premature disintegration, deterioration and defects associated with the use of Kapton and, upon information and belief, undertook to remediate the dangerous condition and hazards related to the use of Kapton and its use and presence in Connecticut, including directing its employees and agents in and into Connecticut to perform, conduct or witness experiments, conduct tests, evaluate data, write warnings, cautions and instructions related to these risks, hazards, limitations, defects and premature deteriorations.

f. Defendant DUPONT, through its employees and agents, participated in an aerospace/aircraft industry task force specifically analyzing hazards, limitations, premature deterioration and related defects in respect to the presence of millions of linear feet of electrical wiring insulated by Kapton installed on various and numerous aircraft which wiring and its insulation was critical to the safe operation, use and maintenance of aircraft, including helicopters manufactured and assembled in Connecticut by SIKORSKY and in or in the proximity of GE engines and related systems installed on SIKORSKY helicopters in Connecticut, and, upon information and belief, directed its employees and agents to appear in

Connecticut and perform, conduct or witness experiments, tests, evaluate data, write warnings, cautions and instructions related to the hazards, limitations, premature deterioration and related defects in wiring insulated by Kapton.

g.  Defendant DUPONT has invoked the benefits and privileges of Connecticut law by registering as a foreign corporation to conduct business in Connecticut and did conduct substantial business in Connecticut averaging between at least $85,000,000 to $125,000,000 per year between 2012 and 2015, expressly appointed an agent for service of process in Connecticut, and waived actual service of process in this matter pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  DUPONT has at least four employees in Connecticut and has directed numerous employees and agents who are not Connecticut residents or assigned to work in Connecticut on a full time basis to perform services and tasks for Defendant DUPONT in Connecticut.

h.  Defendant DUPONT promotes its business and products, including its Kapton Wiring and Teflon, which it advertises as "state-of-the-art," in Connecticut by listing on its internet webpage a business facility in Bridgeport, Connecticut, a copy of which is attached to this Third Amended Complaint as Appendix A.

26. At all relevant times herein, defendant L-3 COMMUNICATIONS CORPORATION (hereinafter "L-3") was and is a Delaware Corporation with its principal place of business in New York, and was and is engaging in continuous and systematic contacts with the State of Connecticut.

27. In October 2012, and on other occasions, Defendant L-3 inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts and

systems, including, but not limited to the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties. During this October 2012 inspection, defendant L-3 noted a number of discrepancies with the wiring on the subject helicopter.

## SUBJECT MATTER JURISDICTION, IN PERSONAM JURISDICTION AND VENUE

28.  Plaintiffs repeat and re-allege each and every allegation heretofore set forth in this Complaint.

29.  Subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332 in that the adverse parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

30.  Subject matter jurisdiction is also based on federal question jurisdiction, as the wrongful death claims are brought, in part, pursuant to the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq*. ("DOHSA").

31.  Subject matter jurisdiction is also based on admiralty jurisdiction, as the subject crash occurred on navigable waters off the coast of Virginia (latitude N. 36 59.2 and longitude W. 75 37.4) while undertaking minesweeping training activities, a traditional maritime activity.

32.  Defendants SIKORSKY and SIKORSKY AEROSPACE are subject to both general and specific personal jurisdiction in Connecticut because they are Connecticut corporations with their principal places of business in Connecticut and the present cause of action arises from Defendant SIKORSKY's and Defendant SIKORSKY AEROSPACE's activities within Connecticut.

33.  Defendant GE is subject to both general and specific personal jurisdiction in Connecticut because it is a Connecticut corporation with its principal place of business in

Connecticut and the present cause of action arises from Defendant GE's activities within Connecticut.

34.   Defendant DUPONT is subject to both general and specific personal jurisdiction in Connecticut for the reasons stated in ¶ 25, *supra*.   Defendant DUPONT marketed, sold and manufactured the unreasonably dangerous and unsafe Kapton wiring contained in the subject helicopter within Connecticut pursuant to an agreement with Connecticut Defendants SIKORSKY and GE.   Furthermore, Defendant DUPONT marketed and sold its Kapton wiring in Connecticut and underook to remediate the dangers of Kapton wiring in Connecticut.   Defendant DuPont also maintains an office in Bridgeport, Connecticut, has an agent of service of process in Connecticut, has at least four employees in Connecticut and advertises its products and services, including Kapton wiring insulation, in Connecticut.

35.   This Court has in personam jurisdiction over Defendant L-3 because Defendant L-3 voluntarily submitted to this Court's jurisdiction, thereby waiving any opposition to personal jurisdiction.

36.   This Court also has supplemental jurisdiction with respect to the claim against Defendant L-3 pursuant to 28 U.S.C. § 1367, in that those claims form part of the same case or controversy.

37.   Venue exists in this District in that the requirements of 28 U.S.C §1391 are satisfied as set forth above, inasmuch as the defendants, and each of them, conduct substantial business in and are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to this litigation occurred in this District.

## GENERAL ALLEGATIONS

38.  Plaintiffs repeat and re-allege each and every allegation heretofore set forth in this Complaint.

39.  The United States Navy's MH-53E helicopter fleet first became operational over twenty-five years ago.  The Navy MH-53E helicopter fleet principally conducts mine sweeping operations and logistical support, among other military activities.

40.  Helicopter Mine Countermeasures Squadron Fourteen also known as Helmineron Fourteen (hereinafter "HM-14"), is an airborne mine countermeasures squadron in the United States Navy.  HM-14 is based in Norfolk, Virginia.  HM-14 operates approximately twelve MH-53E helicopters.

41.  On November 26, 1990, HM-14 took delivery of the subject helicopter from defendant SIKORSKY.

42.  On January 8, 2014, the subject helicopter was being operated by HM-14 on a training flight (hereinafter "the subject flight") involving ocean minesweeping and helicopter ramp operator training in a defined area off the coast of Virginia Beach assigned to the crew by military orders.

43.  VAN DORN was the pilot of the subject flight and SNYDER was the co-pilot. BOONE, COLLINS and a third Naval serviceman who is not a party to this suit were aircrewmen.

44.  The subject flight took place off the coast of Virginia Beach, Virginia.

45.  The subject helicopter took off from Naval Station Norfolk at approximately 8:11 a.m.  The subject helicopter began training operations off the coast of Virginia Beach, Virginia at

approximately 8:40 a.m.  The training involved towing a minesweeping device through the water at approximately 100 feet of altitude.

46.   Upon information and belief, at approximately 10:25 a.m., an explosion occurred on board the subject helicopter aft of the subject helicopter's number one engine compartment, i.e. on the left side of the helicopter looking forward, in the approximate middle of the fuselage.

47.   Fire and black smoke that smelled like fuel rapidly filled the subject helicopter. The crewmen tried unsuccessfully to extinguish the fire.

48.   Blinded by the thick smoke, VAN DORN and SNYDER had no visual reference to the horizon and could not reference their flight instruments.  As a result, upon information and belief, the pilots lost their spatial orientation and situational awareness and the subject helicopter descended violently, struck the water and began to sink.

49.   BOONE, who was severely and permanently injured in the crash, was able to exit the subject helicopter and swim to the surface of the water.  VAN DORN, who initially survived the crash, was visible on the surface thirty to forty yards away from BOONE and was yelling for help.  COLLINS was also on the surface of the water, apparently unconscious and floating face down.

50.   A Navy rescue helicopter pulled COLLINS and VAN DORN out of the water at approximately 11:15 a.m. and, because of the severity of their injuries, immediately flew them to Sentara Norfolk General Hospital in Norfolk, Virginia.

51.   BOONE and the third crewman were rescued by another Navy helicopter at approximately 11:35 a.m.

52.   On arrival at Sentara Norfolk General Hospital, COLLINS could not be revived and was pronounced dead at 11:41 a.m.

53.  VAN DORN sustained massive internal injuries, an amputated left hand and right foot, hypothermia and other severe injuries.  VAN DORN was pronounced dead at the Sentara Norfolk General Hospital from cardiac arrest at 4:35 p.m., following treatment and suffering from his physical injuries sustained in the crash.

54.  BOONE survived the crash but suffered severe and permanent injuries and ultimately survived.  The third crewman also survived.

55.  SNYDER was unable to escape the subject helicopter.  Navy divers recovered SNYDER's body from the subject helicopter's cockpit on January 14, 2014.

56.  At the time of the subject flight, the subject helicopter and its component parts and systems, including the subject helicopter engines, and their wiring and fuel systems, the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties, had recently undergone the first of three life extension maintenance and overhaul phases.  As part of these overhaul phases, Kapton wiring in the subject helicopter was to be replaced.  At the time of the subject flight, not all of the Kapton wiring had been removed from the subject helicopter.

57.  The Kapton wiring insulation was designed, manufactured, tested, inspected, assembled, maintained, marketed, warranted, sold, leased and/or distributed by Defendant DUPONT and installed in the subject helicopter by Defendant SIKORSKY in Connecticut with the participation, knowledge and assistance of Defendant DUPONT.

58.  Kapton wiring manufactured by Defendant DuPont is known to be defective and unsafe due to its susceptibility to corrosion, premature degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration.

15

These characteristics rendered the wiring in the subject helicopter prone to arcing events, arc tracking, flashover, deflagration, and other unplanned conductive and electrical events, in-flight emergencies and fires.

59. Kapton wiring insulation was designed, manufactured, tested, patented and sold by Defendant DUPONT based on the representation that it was fit for use in helicopter wiring systems, including the wiring of MH-53E helicopters.  Given the importance of electrical performance and its necessity in respect to the operation of aircraft, the large amount of wiring bundled together during installation and the consequent limitations on access to the wiring and wiring insulation once installed, Kapton was not fit for use in aircraft operated in a marine environment such as is routine for the MH-53E helicopter and other aircraft and helicopters operated off ships and in mine sweeping operations.  Furthermore, it was known to Defendants DUPONT, SIKORSKY and the other defendants that the Kapton wiring insulation on the subject helicopter was unfit and dangerous on aircraft in general and in particular on MH-53E helicopters; consequently, the Navy's fleet of aircraft, including MH-53E  aircraft were put at risk and the national security of the United States compromised due to the known hazards associated with Kapton insulation on MH-53E mine sweeping helicopters and other aircraft such that the Navy and others convened an aviation industry task force and contracted with defendants to evaluate the extent of the problem and propose appropriate remediation.  Furthermore, the U.S. Navy contracted with defendants, and each of them, to provide technical guidance to the Navy to minimize this problem by virtue of guidance to be provided to the U.S. Navy maintenance organizations to address this problem.  Further, certain life extension maintenance and overhaul phases were adopted to identify and remediate what constitutes the wiring's insulation susceptibility to corrosion, premature degradation, deterioration, wear, alteration upon

contact with water, carbonization upon exposure to heat, and disintegration. These characteristics rendered the wiring in the subject helicopter prone to electrical arcing events, arc tracking, flashover, deflagration, and other unplanned conductive and electrical events, in-flight emergencies and fires.

60. Upon information and belief, these life extension maintenance and overhaul phases, as well as maintenance, inspection, updates, overhauls and repairs for the subject helicopter and its component parts, subject engines, wires and wiring insulation, fuel lines, fuel transfer tubes, fasteners and ties were carried out by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3, and each of them.

61. The defective wiring in the subject helicopter, including but not limited to the Kapton wiring, was designed, manufactured, tested, inspected, assembled, maintained, marketed, warranted, sold, leased and/or distributed by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3.

62. Portions of the wiring in the subject helicopter, including but not limited to the Kapton wiring, were bundled together and installed and affixed by Defendants SIKORSKY, SIKORSKY AEROSPACE, GE, DUPONT and L-3 using nylon zip ties.

63. An engineering investigation into the subject crash, conducted pursuant to the Navy's Manual of the Judge Advocate General (JAGMAN), produced a final report pertaining to the subject crash, and revealed two "through-wall" holes in the subject helicopter's fuel transfer pressure tube.

64. The fuel transfer pressure tube is an aluminum component of the subject helicopter's fuel transfer system, located inside the helicopter, which transfers fuel from storage tanks inside the subject helicopter's sponsons to a location selected by the crew.

65. The first hole was on the front side of the subject helicopter's fuel transfer tube and measured .134 inches long and .011 inches wide. The report concluded this hole was likely caused by a nylon zip tie used to bundle and affix the electrical wiring in the subject helicopter, which rubbed against and chafed the fuel transfer tube.

66. The JAGMAN report concluded a nylon zip tie likely caused the breach in the fuel transfer tube for two reasons. First, rounded contours at each edge of the breach chafe area were consistent with the contours of a large or medium-sized nylon zip tie. Second, no foreign metal transfer was found in the chafe damage area.

67. Safe operation, repair and maintenance of the MH-53E helicopter requires a minimum of two inches between wiring and any flammable liquid, fuel or oxygen line. In addition, wires in the vicinity of fuel transfer tubes must be closely clamped and rigidly supported to prevent contact with ignitable sources. Finally, zip ties are required to be appropriately fastened to remove any sharp edges that might increase the risk of chafing of adjacent helicopter components.

68. The second hole in the fuel transfer tube was oval shaped and measured .225 by .110 inches. The second hole was located approximately .25 inches below the first hole, near the front side of the fuel transfer tube. The perimeter around the second hole displayed shallow chafe damage into the parent material of the tube. Stereoscopic examination of the second hole revealed it was likely caused by electrical arcing/shorting in the area of chafing damage, which was produced by an active conductor tack welding directly to the surface of the fuel transfer tube. Stereoscopic examination also revealed a dispersal of carbon around the perimeter of the hole, consistent with a fuel vapor cloud perimeter.

69. The JAGMAN report also concluded that wire bundle chafing caused a breach in the insulation of an actively conductive wire near the failed fuel transfer tube, causing electrical arcing to further damage the fuel transfer tube's chafed surface and resulting in the dispersal of fuel and/or fuel vapor in the vicinity of the electrical current.

70. The resulting explosion caused the onboard fire that directly led to the subject crash, the deaths of VAN DORN, SNYDER and COLLINS, and the serious and permanent injuries suffered by BOONE.

71. Upon information and belief, the subject crash is at least the second known instance of a MH-53E or CH-53E helicopter experiencing an inflight fire due to the compromise of a fuel transfer tube by chafing caused by a breach in the insulation of an actively conductive wire insulated by Kapton near a fuel transfer tube, causing electrical arcing and a resulting inflight fire, placing the occupants of the helicopter in immediate risk of serious and possibly fatal injuries, which event was investigated by each of the defendants and said risks were known to defendants and each of them since at least 1999.

**FIRST CLAIM FOR WRONGFUL DEATH, SURVIVAL DAMAGES
AND PERSONAL INJURY DAMAGES ARISING OUT OF THE
WRONGFUL DEATHS OF VAN DORN, SNYDER AND COLLINS
AND THE PERSONAL INJURIES OF BOONE AGAINST
DEFENDANTS SIKORSKY AND SIKORSKY AEROSPACE**

72. Plaintiffs repeat and re-allege each and every allegation heretofore set forth in this Complaint.

73. On January 8, 2014, Defendants SIKORSKY and SIKORSKY AEROSPACE owed VAN DORN, SNYDER, COLLINS and BOONE a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of the subject helicopter, its structure and fuselage, and

19

their component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, and the duty to use reasonable care in the development, production and distribution of instructions for the safe assembly and use of the subject helicopter, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter and its component parts and systems, including the subject helicopter's engines, electrical systems, electrical wires, wire insulation, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including VAN DORN, COLLINS, SNYDER and BOONE.

74.   Upon information and belief, at all relevant times stated herein, the subject crash, injuries, deaths, and resultant damages were proximately caused by the negligence of Defendants SIKORSKY and SIKORSKY AEROSPACE, by and through their officers, agents, employees, servants and others under their employ and control, in that Defendants SIKORSKY and SIKORSKY AEROSPACE breached their aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter, its structure and fuselage, and their component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, and ties related thereto, and failed to adequately detect, correct and warn or caution about dangerous and unsafe conditions causing the subject helicopter, its

electrical systems, including its electrical wires and wire insulation, and its fuel systems, including its fuel lines/fuel transfer tubes, to be unairworthy and/or otherwise unsafe on and prior to January 8, 2014, and caused or contributed to the crash of the subject helicopter.

75.    Specifically, Defendants SIKORSKY and SIKORSKY AEROSPACE were negligent, by act or omission, and breached their duty of care owed to VAN DORN, COLLINS, SNYDER and BOONE in one or more of the following respects, by:

   a.  Failing to adhere to the proper safe distance requirements and other safeguards between: (1) the fuel lines/fuel transfer tubes running between the subject helicopter's fuel tanks and the subject helicopter's engines; and (2) the wire bundles used to transmit electrical signals and energy to the subject helicopter's components and systems.

   b.   Failing to properly secure zip ties on the subject helicopter that were supposed to safely bundle and stow electrical wires and failing to keep the zip ties from contacting the fuel lines/fuel transfer tubes and other helicopter components containing ignitable substances.

   c.  Failing to prevent chafing of the fuel lines/fuel transfer tubes and electrical wires by the zip ties, causing damage and deterioration of the fuel lines/fuel transfer tubes, and electrical wires of the subject helicopter; and failing to prevent electrical current, heat and electrical arcing to ignite fuels and/or fuel vapors from the compromised and damaged fuel lines/fuel transfer tubes and electrical wires of the subject helicopter, causing an explosion, fire and blinding smoke.

d.  Failing to adequately warn users, operators and maintainers of the subject helicopter of the chafing risks posed by the use of nylon zip ties and/or improperly secured nylon zip ties.

e.  Failing to adequately warn users, operators and maintainers of the subject helicopter of the risks posed by close proximity between electric wires and fuel lines/fuel transfer tubes.

f.  Manufacturing, distributing, installing and failing to remove Kapton wiring in the subject helicopter, which was defective and unsafe due to its susceptibility to corrosion, premature degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat and disintegration, and which defects rendered the wiring in the subject helicopter prone to electrical arcing events, arc tracking, flashover, deflagration and other unplanned electrical conduction and energizing events.

g.  Manufacturing, distributing and installing fuel lines/fuel transfer tubes in the subject helicopter that were defective and unsafe due to their susceptibility to corrosion, premature degradation, deterioration, wear and alteration.

76.  On January 8, 2014, the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were unreasonably dangerous and unsafe by reason of the defective design, manufacture, assembly, testing, inspection, service, distribution and sale of the subject helicopter and its component parts, and its inadequate and

unsafe instructions, manuals, cautions, and warnings, by Defendants SIKORSKY and SIKORSKY AEROSPACE.

77. At all times material hereto and prior to January 8, 2014, Defendants SIKORSKY and SIKORSKY AEROSPACE had an ongoing and continuing duty to warn and were required by contract, specification, standard and/or otherwise, to make certain that any defects in the component and replacement parts for the subject helicopter, including, but not limited to, the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties relating thereto, were corrected prior to causing injury or death.

78. Upon information and belief, Defendants SIKORSKY and SIKORSKY AEROSPACE breached their duties to adequately warn of and to correct the defective and dangerous conditions in the component and replacement parts for the subject helicopter, including, but not limited to, the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto.

79. As a proximate cause of the defective conditions of the component and replacement parts for the subject helicopter, including but not limited to the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, inadequate and defective warnings, and the failure to warn of and/or correct these defects, as alleged herein, and as a direct result of the negligent acts and omissions of Defendants SIKORSKY and SIKORSKY AEROSPACE, the subject helicopter

crashed and VAN DORN, SNYDER, and COLLINS suffered fatal injuries and BOONE suffered serious and permanent physical and mental injuries.

80.   On January 8, 2014, the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and intended to be used, and in a manner foreseeable to defendants and for which adequate and safe instructions, manuals, cautions and warnings were required to be issued.

81.   The defects in the design, manufacture, assembly, instructions, manuals and warnings, testing, inspection, service, distribution and sale of the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, caused the subject helicopter to crash and caused VAN DORN, SNYDER, and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent physical and mental injuries.

82.   In addition, as shown by the sudden malfunction on board the subject helicopter, there were catastrophic defects in the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto.  Said defects existed at the time the

subject helicopter left the control of Defendants SIKORSKY and SIKORSKY AEROSPACE and were not solely the result of causes other than a product defect existing at the time of the manufacture, distribution, maintenance and repair of the subject helicopter, subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto by Defendants SIKORSKY and SIKORSKY AEROSPACE.

83. Prior to January 8, 2014, Defendants SIKORSKY and SIKORSKY AEROSPACE expressly and/or implicitly warranted and represented that the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wiring insulation, fasteners and ties relating thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and that the instructions, manuals, cautions, and warnings that had been issued were adequate and safe, and further that the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were free from defects.

84. Defendants SIKORSKY and SIKORSKY AEROSPACE breached said express and implied warranties in that on January 8, 2014, the subject helicopter and its component parts, including the subject helicopter's engines, the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were not airworthy, of

merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and the instructions, manuals and warnings which had been issued were not adequate and safe, but were defective and thereby caused the subject crash and caused VAN DORN, SNYDER and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent physical and mental injuries.

85.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY and SIKORSKY AEROSPACE as aforesaid, and the death of decedent VAN DORN, the Estate of LT. J Wesley Van Dorn, the decedent's wife, two natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

86.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY and SIKORSKY AEROSPACE as aforesaid, decedent VAN DORN sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

87.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties, of Defendants SIKORSKY and SIKORSKY AEROSPACE as aforesaid, and the death of decedent SNYDER, the Estate of LT. Sean

Christopher Snyder, the decedent's wife, four natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

88.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY and SIKORSKY AEROSPACE as aforesaid, decedent SNYDER sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

89.   As a proximate cause of the  negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY and SIKORSKY AEROSPACE, and the death of decedent COLLINS as aforesaid, the Estate of Petty Officer 3rd Class Brian Andrew Collins, the decedent's wife, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education and are entitled to be compensated therefor.

90.   As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendants SIKORSKY and SIKORSKY

AEROSPACE as aforesaid, decedent COLLINS sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

91.   As a proximate cause of the aforesaid negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties by Defendants SIKORSKY and SIKORSKY AEROSPACE as aforesaid, BOONE has sustained serious and permanent personal, physical and emotional injuries.

92.   As a result of said injuries, BOONE has lost earnings and earnings capacity and will pray leave of court to be compensated for both past and future claimed lost earnings and earnings capacity at the time of trial.

93.   BOONE has and will also continue to suffer severe and excruciating physical pain and suffering, distressing mental anguish, fear of impending death, and emotional distress as a result of said injuries.  In the treatment of the aforesaid injuries, BOONE was compelled to and did employ the services of physicians, surgeons, and other medical personnel and incurred expenses relative to the care and treatment of said injuries.  BOONE is informed and believes and thereupon alleges that he will be compelled to seek further treatment in the future for care and treatment of said injuries and to incur further expenses for the same. BOONE will pray leave of court to receive compensation for both past and future claimed medical and related expenses at the time of trial.

94.   By reason of the foregoing, the VAN DORN, SNYDER and COLLINS plaintiffs are entitled to recover all legally available damages under the Death on the High Seas Act, 46 U.S.C. 30301, *et seq*., and any other applicable laws, including but not limited to, damages for

sorrow, mental anguish and solace, pre-death pain and suffering, loss of income, services, protection, care, and assistance of the deceased, medical expenses, funeral expenses, in amounts according to proof and within the jurisdiction of this court, and plaintiff BOONE is entitled to recover all legally available damages under General Maritime Law and any other applicable laws, including applicable state laws.

### SECOND CLAIM FOR WRONGFUL DEATH, SURVIVAL DAMAGES AND PERSONAL INJURY DAMAGES ARISING OUT OF THE WRONGFUL DEATHS OF VAN DORN, SNYDER AND COLLINS AND THE PERSONAL INJURIES OF BOONE AGAINST DEFENDANT GENERAL ELECTRIC COMPANY

95.  Plaintiffs repeat and re-allege each and every allegation heretofore set forth in this Complaint.

96.  On January 8, 2014, Defendants GE owed VAN DORN, COLLINS, SNYDER and BOONE a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto.

97.  On January 8, 2014, Defendant GE owed VAN DORN, SNYDER, COLLINS and BOONE a duty to use reasonable care in the development, production and distribution of instructions for the safe use of the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire

insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject aircraft's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including VAN DORN, SYNDER, COLLINS and BOONE.

98.   Upon information and belief, at all relevant times stated herein, the subject crash, injuries, death, and resultant damages were proximately caused by the negligence of Defendant GE, by and through its officers, agents, employees, servants and others under their employ and control, in that Defendant GE breached its aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, and failed to adequately detect, correct and warn or caution about dangerous and unsafe conditions causing the subject helicopter's engines, their related electrical systems, including their electrical wires and wire insulation, and their fuel

systems, including their fuel lines/fuel transfer tubes, to be unairworthy and/or otherwise unsafe on and prior to January 8, 2014, and which caused or contributed to the crash of the subject helicopter.

99.   Specifically, Defendant GE was negligent, by act or omission, and breached its duty of care owed to VAN DORN, COLLINS, SNYDER and BOONE by integrating, manufacturing, distributing, installing and designing fuel lines and fuel transfer tubes contained in the interface between subject helicopter's engines, including their fuel systems and electrical systems, and the subject helicopter's fuel systems and electrical systems, that were defective and unsafe due to their susceptibility to inflight fire due to corrosion, degradation, deterioration, wear and alteration of wiring.

100.   On January 8, 2014, the subject helicopter engines, including their fuel systems and electrical systems, and the interface between those engines and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, were unreasonably dangerous and unsafe by reason of the defective design, manufacture, assembly, testing, inspection, service, distribution and sale of the subject helicopter's engines and their component parts, including their fuel systems and electrical systems, and their inadequate and unsafe instructions, manuals, cautions, and warnings written by Defendant GE.

101.   At all times material hereto and prior to January 8, 2014, Defendant GE had an ongoing and continuing duty to warn and was required by contract, specification, standard and/or otherwise, to make certain that any hazards, dangers or defects in the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's

electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties relating thereto, were corrected prior to causing injury or death and said duty was breached by defendant GE.

102. As a proximate cause of the defective conditions of the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, and the failure to warn of and/or correct these defects, as alleged herein, and as a direct result of the negligent acts and omissions of Defendant GE, the subject helicopter crashed and VAN DORN, SNYDER and COLLINS suffered fatal injuries while BOONE suffered serious and permanent injuries.

103. On January 8, 2014, the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems and fuel systems, were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and intended to be used, and in a manner foreseeable to Defendant GE and for which adequate and safe instructions, manuals, cautions and warnings were required to be issued.

104. The defects in Defendant GE's design, manufacture, assembly, instructions, manuals and warnings, testing, inspection, service, distribution and sale of the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject

helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners and ties related thereto, caused the subject helicopter to crash and caused VAN DORN, SNYDER, and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent injuries.

105. In addition, as shown by the sudden malfunction on board the subject helicopter, there were catastrophic defects in the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto. Said defects existed at the time the subject helicopter and its engines left the control of Defendant GE and were not solely the result of causes other than a product defect existing at the time of the manufacture, distribution, maintenance and repair of the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems and fuel systems.

106. Prior to January 8, 2014, Defendant GE expressly and/or implicitly warranted and represented that the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto were airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced,

distributed, sold, intended and used, and that the instructions, manuals, cautions, and warnings that had been issued were adequate and safe, and further that the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, were free from defects.

107. Defendant GE breached said express and implied warranties in that on January 8, 2014, the subject helicopter's engines, including their fuel systems and electrical systems, and the interface between those engines, including their fuel systems and electrical systems, and the subject helicopter's electrical systems, electrical wires, wire insulation, fasteners and ties related thereto, and the subject helicopter's fuel systems, fuel lines/fuel transfer tubes, fasteners, and ties related thereto, were not airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and the instructions, manuals and warnings which had been issued were not adequate and safe, but were defective and thereby caused the subject crash and caused VAN DORN, SNYDER and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent injuries.

108. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE and the death of decedent VAN DORN as aforesaid, the Estate of LT. J Wesley Van Dorn, the decedent's wife, two natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of

services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

109.  As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE as aforesaid, decedent VAN DORN sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

110.  As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE, and the death of decedent SNYDER as aforesaid, the Estate of LT. Sean Christopher Snyder, the decedent's wife, four natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

111.  As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE as aforesaid, decedent SNYDER sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

112.  As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE, and the death of decedent COLLINS as aforesaid, the Estate of Petty Officer 3rd Class Brian Andrew Collins, the decedent's wife, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education and are entitled to be compensated therefor.

113.  As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant GE as aforesaid, decedent COLLINS sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

114.  As a proximate cause of the aforesaid negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties by Defendant GE as aforesaid, BOONE has sustained serious and permanent personal, physical and emotional injuries.

115.  As a result of said injuries, BOONE has lost earnings and earnings capacity and will pray leave of court to be compensated for both past and future claimed lost earnings and earnings capacity at the time of trial.

116.  BOONE has and will also continue to suffer severe and excruciating physical pain and suffering, distressing mental anguish, fear of impending death, and emotional distress as a result of said injuries.  In the treatment of the aforesaid injuries, BOONE was compelled to and

did employ the services of physicians, surgeons, and other medical personnel and incurred expenses relative to the care and treatment of said injuries.  BOONE is informed and believes and thereupon alleges that he will be compelled to seek further treatment in the future for care and treatment of said injuries and to incur further expenses for the same. BOONE will pray leave of court to receive compensation for both past and future claimed medical and related expenses at the time of trial.

117.  BOONE has and will also continue to suffer severe and excruciating physical pain and suffering, distressing mental anguish, fear of impending death, and emotional distress as a result of said injuries.  In the treatment of the aforesaid injuries, BOONE was compelled to and did employ the services of physicians, surgeons, and other medical personnel and incurred expenses relative to the care and treatment of said injuries.  BOONE is informed and believes and thereupon alleges that he will be compelled to seek further treatment in the future for care and treatment of said injuries and to incur further expenses for the same. BOONE will pray leave of court to receive compensation for both past and future claimed medical and related expenses at the time of trial.

118.  By reason of the foregoing, the VAN DORN, SNYDER and COLLINS plaintiffs are entitled to recover all legally available damages under the Death on the High Seas Act, 46 U.S.C. 30301, *et seq*., and any other applicable laws, including but not limited to, damages for sorrow, mental anguish and solace, pre-death pain and suffering, loss of income, services, protection, care, and assistance of the deceased, medical expenses, funeral expenses, in amounts according to proof and within the jurisdiction of this court, and plaintiff BOONE is entitled to recover all legally available damages under General Maritime Law and any other applicable laws, including applicable state laws.

**THIRD CLAIM FOR WRONGFUL DEATH, SURVIVAL DAMAGES AND
PERSONAL INJURY DAMAGES ARISING OUT OF THE
WRONGFUL DEATHS OF VAN DORN, SNYDER AND COLLINS
AND THE PERSONAL INJURIES OF BOONE AGAINST
<u>DEFENDANT E.I. DU PONT DE NEMOURS & CO.</u>**

119. Plaintiffs repeat and re-allege each and every allegation heretofore set forth in this Complaint.

120. On January 8, 2014, Defendant DUPONT owed VAN DORN, COLLINS, SNYDER and BOONE a duty to exercise reasonable care in the study, analyses, design, manufacture, assembly, inspection, testing, distribution, sale, servicing, maintenance, overhaul, and/or repair of the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, and the duty to use reasonable care in the development, production and distribution of instructions for the safe use of the and/or repair of the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, including, but not limited to, operation, training, and maintenance manuals in accordance with the airworthiness requirements, standards of performance in the industry, and standards promulgated by the United States Government, and to do so in a reasonable and prudent manner so as not to allow the subject helicopter and its electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto to be unairworthy, and/or otherwise unsafe so as to pose an unreasonable risk of injury and death to U.S. Navy personnel, including VAN DORN, COLLINS, SNYDER and BOONE.

121. Upon information and belief, at all relevant times stated herein, the subject crash, injuries, death, and resultant damages were proximately caused by the negligence of Defendant DUPONT, by and through its officers, agents, employees, servants and others under their employ

and control, in that Defendant DUPONT breached its aforesaid duties, carelessly failed to properly design, study, analyze, manufacture, assemble, inspect, service, overhaul, repair, alter, modify, test, certify, and maintain the and/or repair the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, and failed to adequately detect, correct and warn or caution about dangerous and unsafe conditions causing the subject helicopter, its electrical systems, electrical wires including Kapton wiring and wire insulation, to be unairworthy and/or otherwise unsafe on and prior to January 8, 2014, and which caused or contributed to the crash of the subject helicopter.

122. Specifically, Defendant DUPONT was negligent, by act or omission, and breached its duty of care owed to VAN DORN, COLLINS, SNYDER and BOONE in one or more of the following respects, by:

    a.  Manufacturing, distributing, installing and failing to remove Kapton wiring in the subject helicopter, which was defective and unsafe due to its susceptibility to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat and disintegration, and which defects rendered the wiring in the subject helicopter prone to arcing events, arc tracking, flashover, deflagration and other unplanned conduction and energizing events;

    b.  Failing to employ the proper safe distance and other safeguards between: (1) the fuel lines/fuel transfer tubes running between the subject helicopter's fuel tanks and the subject helicopter's engines; and (2) the wire bundles, including Kapton wiring, used to transmit electrical currents to helicopter components and systems;

    c.  Failing to properly secure zip ties that were supposed to safely bundle and stow electrical wires, including Kapton wiring, and failing to keep the zip ties from

contacting the fuel lines/fuel transfer tubes and other helicopter components containing ignitable substances;

d. Failing to prevent chafing of the fuel lines/fuel transfer tubes and electrical wires, including Kapton wiring, by the zip ties, causing damage and deterioration of the fuel lines/fuel transfer tubes, and electrical wires, including Kapton wiring; and failing to prevent electrical current, heat, and electrical arcing to ignitable fuels and/or fuel vapors from the compromised and damaged fuel lines/fuel transfer tubes and electrical wires, including Kapton wiring, causing an explosion, fire and blinding smoke.

e. Failing to adequately warn users, operators and maintainers of the subject helicopter of the chafing risks to fuel lines, fuel transfer tubes and electrical wires, including Kapton wiring, posed by the use of nylon zip ties and/or improperly secured nylon zip ties, and dangers and hazards associated with the failure of Kapton wiring insulation to perform as required for safe flight.

f. Failing to adequately warn users, operators and maintainers of the subject helicopter of the risks posed by close proximity between electric wires, including Kapton wiring, and fuel lines/fuel transfer tubes and to remediate the dangers of Kapton.

123. On January 8, 2014, the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, were unreasonably dangerous and unsafe by reason of the defective design, manufacture, assembly, testing, inspection, service, distribution and sale of the subject helicopter's electrical systems and their

component parts, including its Kapton wiring, and its inadequate and unsafe instructions, manuals, cautions, and warnings by Defendant DUPONT.

124. At all times material hereto and prior to January 8, 2014, Defendant DUPONT had an ongoing and continuing duty to warn and was required by contract, specification, standard and/or otherwise, to make certain that any defects in the component and replacement parts for the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, were corrected prior to causing injury or death.

125. Upon information and belief, Defendant DUPONT breached its duties to adequately warn of and to correct the defective and dangerous conditions in the component and replacement parts for the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto.

126. As a proximate cause of the defective conditions of the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, inadequate and defective warnings, and the failure to warn of and/or correct these defects, as alleged herein, and as a direct result of the negligent acts and omissions of Defendant DUPONT, the subject helicopter crashed and VAN DORN, SNYDER, and COLLINS suffered fatal injuries while BOONE suffered serious and permanent injuries.

127. On January 8, 2014, the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and intended to be used, and in a manner foreseeable to Defendant Dupont and for which adequate and safe instructions, manuals, cautions and warnings were required to be issued.

128. The defects in the design, manufacture, assembly, instructions, manuals and warnings, testing, inspection, service, distribution and sale of the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto caused the subject helicopter to crash and caused VAN DORN, SNYDER, and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent injuries.

129. In addition, as shown by the sudden malfunction on board the subject helicopter, there were catastrophic defects in the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto. Said defects existed at the time the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties left the control of Defendant DUPONT and were not solely the result of causes other than a product defect existing at the time of the manufacture, distribution, maintenance and repair of the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto by Defendant DUPONT.

130. Prior to January 8, 2014, Defendant DUPONT expressly and/or implicitly warranted and represented that the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, were airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and that the instructions, manuals, cautions, and warnings that had been issued were adequate and safe, and further that the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto were free from defects.

131. Defendant DUPONT breached said express and implied warranties in that on January 8, 2014, the subject helicopter's electrical systems, electrical wires including Kapton wiring, wire insulation, fasteners and ties related thereto, were not airworthy, of merchantable quality, fit and safe for the purposes for which they were designed, manufactured, assembled, tested, serviced, distributed, sold, intended and used, and the instructions, manuals and warnings which had been issued were not adequate and safe, but were defective and thereby caused the subject crash and caused VAN DORN, SNYDER and COLLINS to suffer serious and fatal injuries and BOONE to suffer serious and permanent injuries.

132. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant DUPONT and the death of decedent VAN DORN as aforesaid, the Estate of LT. J Wesley Van Dorn, the decedent's wife, two natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

133. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant DUPONT as aforesaid, decedent VAN DORN sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of decedent's wrongful death.

134. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties, of Defendant DUPONT, and the death of decedent SNYDER as aforesaid, the Estate of LT. Sean Christopher Snyder, the decedent's wife, four natural infant children, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education, and are entitled to be compensated therefor.

135. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant DUPONT as aforesaid, decedent SNYDER sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of his wrongful death.

136. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant DUPONT, and the death of decedent COLLINS as aforesaid, the Estate of Petty Officer 3rd Class Brian Andrew Collins, the decedent's wife, and all surviving parents, siblings and next of kin, and each of them, have sustained damages, including, but not limited to, the loss of earnings of the decedent, loss of services, loss of inheritance, loss of prospective accumulations, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, training, guidance and education and are entitled to be compensated therefor.

137. As a proximate cause of the negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties of Defendant DUPONT as aforesaid, decedent COLLINS sustained serious personal injuries and other medical conditions, which resulted in prolonged severe and excruciating conscious pain, suffering and fear of impending death from the moment of the explosion and resulting smoke and fire up to the moment of decedent's wrongful death.

138. As a proximate cause of the aforesaid negligence, failure to warn, unreasonably dangerous and defective products, and breach of warranties by Defendant DUPONT as aforesaid, BOONE has sustained serious and permanent personal, physical and emotional injuries.

139. As a result of said injuries, BOONE has lost earnings and earnings capacity. BOONE will pray leave of court to be compensated for both past and future claimed lost earnings and earnings capacity at the time of trial.

140. BOONE has and will also continue to suffer severe and excruciating physical pain and suffering, distressing mental anguish, fear of impending death, and emotional distress as a result of said injuries. In the treatment of the aforesaid injuries, BOONE was compelled to and did employ the services of physicians, surgeons, and other medical personnel and incurred expenses relative to the care and treatment of said injuries. BOONE is informed and believes and thereupon alleges that he will be compelled to seek further treatment in the future for care and treatment of said injuries and to incur further expenses for the same. BOONE will pray leave of court to receive compensation for both past and future claimed medical and related expenses at the time of trial.

141. By reason of the foregoing, the VAN DORN, SNYDER and COLLINS plaintiffs are entitled to recover all legally available damages under the Death on the High Seas Act, 46