## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Nicole Van Dorn, as surviving spouse and personal representative for the Estate of LT J Wesley Van Dorn, USN, deceased; | |
| Amy Snyder, as surviving spouse and personal representative for the Estate of LT Sean Christopher Snyder, USN, deceased; | **Docket No. 3:15-cv-01877-AWT** |
| Cheyenne Collins, as surviving spouse and personal representative for the Estate of Petty Officer 3rd Class Brian Andrew Collins, USN, deceased; and | **Plaintiffs' Memorandum of Law in Opposition to Defendant E.I du Pont de Nemours and Company's Motion to Dismiss Plaintiffs' Third Amended Complaint** |
| Petty Officer 2nd Class Dylan Morgan Boone, USN, | |
| Plaintiffs, | |
| - against - | |
| Sikorsky Aircraft Corporation; Sikorsky Support Services, Inc., dba Sikorsky Aerospace Services; General Electric Company; E.I. du Pont de Nemours and Company; and L-3 Communications Corporation, | |
| Defendants. | |

**KREINDLER & KREINDLER LLP**
Francis G. Fleming, Esq. (CT 30032)
Andrew J. Maloney, Esq. (CT 15639)
750 Third Avenue
New York, New York 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432
Email: ffleming@kreindler.com
Email: amaloney@kreindler.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................... 1

III.    SUMMARY OF ARGUMENT ............................................................................ 3

   A.   DuPont Has Partly Consented to Jurisdiction in Connecticut. ........................... 3

   B.   Jurisdiction Over DuPont in Connecticut Comports with Due Process. ............. 4

      1.   DuPont Reached into Connecticut to Install, Inspect and Manufacture Its Kapton Insulated Wiring in the Subject Helicopter.  The Failure of That Wiring Gives Rise to the Present Claims. .............................................................................................. 4

      2.   DuPont Sold Its Kapton Wiring in Connecticut  Through Regional Distributors. .......... 5

      3.   Jurisdiction Over DuPont in Connecticut is Reasonable. ................................. 6

IV.    ARGUMENT ........................................................................................................ 6

   A.   DuPont Is Subject to Personal Jurisdiction in Connecticut. ............................... 6

   B.   DuPont Has Consented to Personal Jurisdiction In Connecticut to the Extent Permissible by the Constitution. ............................................................................................. 7

   C.   Jurisdiction over DuPont in Connecticut Comports with Due Process. ........................... 12

      1.   DuPont Reached into Connecticut to Install, Inspect and Manufacture Its Kapton Insulated Wiring in the Subject Helicopter.  The Failure of That Wiring Gives Rise to the Present Claims. .............................................................................................. 12

      2.   Plaintiffs Also Satisfy the "Stream of Commerce" Test. ................................. 15

      3.   Jurisdiction Over DuPont in Connecticut Is Reasonable. ................................. 17

   D.   Jurisdictional Discovery and Transfer. ............................................................. 19

V.   CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) .......... 15, 16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ................................ 6, 8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ....................... 18

*Brown v. CBS Corp.*, 19 F. Supp. 3d 390 (D. Conn. 2014) ........................................... 7, 9, 10, 11

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2014) ....................................... 7, 10, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. at 476 (1985) ........................................ 5, 7, 12, 14, 17

*Granger v. Marriott Corp.*, No. CV91-0398893S, 1993 WL 454236 (Conn. Super. Oct. 21, 1993) ........................................................................................................................................ 8

*Estate of Nunez-Polanco v. Boch Toyota, Inc.*, 339 F. Supp.2d 381 (D. Conn. 2014) ................. 10

*In re Terrorist Attacks on September 11, 2001*, 689 F. Supp.2d 552 (S.D.N.Y. 2010) ................ 19

*International Shoe Co v. Washington*, 326 U.S. 310 (1945) ........................................................ 12

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) ................................................... 16

*Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346 (2014) ...................................... 12

*Kernan v. Kurtz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ..................................................... 18

*Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990) ............................................ 11

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32 (2d Cir. 2001) ................................................................................................... 12

*Metropolitaion Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ......... 17

*Metzermacher ex rel. Metzermacher*, 570 F. Supp.2d 292 (D. Conn. 2008) ................................ 7

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ..................................................... 3

*Pennoyer v. Neff*, 95 U.S. 714 (1877) ........................................................................................ 14

*Pomazi v. Health Industries of America*, 869 F.Supp. 102 (D. Conn. 1994) ........................ 10, 11

*Quinn v. Fishkin*, 117 F. Supp.3d 134 (D. Conn. 2015) ........................................................ 6, 12

*Ruiz v. Mukasy*, 552 F.3d 269 (2d Cir. 2009) ............................................................................. 20

*Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86 (D. Conn. 2001) ........................................... 16

*Sherman Associates. v. Kals*, 899 F. Supp. 868 (D. Conn. 1995)................................................. 12

*Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95 (E.D.N.Y. 2000)................................................ 18

*Total Aviation Services, Inc. v. United Jersey Bank*, 626 F. Supp. 1087 (E.D.N.Y. 1986).......... 14

*USES Mfg., Inc. v. Rocky Mountain Inst. Research*, 94 F. Supp. 2d 218 (D. Conn. 2000).. 8, 11, 3

*Vandelune v. 4B Elevator Components Unltd.*, 148 F.3d 943, 948 (8th Cir. 1998) ................. 6, 17

*Wallenta v. Avis Rent A Car System*, 522 A.2d 820 (Ct. App. 1987) ................................. 9, 10, 11

*Wender v. Trading Cove Associates*, No. 549346, 1999 WL 353474 (Conn. Super. May 21, 1999)..................................................................................................................................... 8

*WorldCare Corp. v. World Insurance Co.*, 767 F. Supp. 2d 341 (D. Conn. 2011) ...... 3, 7, 8, 9, 11

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)................................. 15, 16

**Statutes**

28 U.S.C. § 1404............................................................................................................................ 19

28 U.S.C. § 1406............................................................................................................................ 19

28 U.S.C. § 1631........................................................................................................................ 1, 19

Connecticut General Statute § 33-600 ............................................................................................ 7

Connecticut General Statute § 33-924(b) .................................................................................... 8, 9

Connecticut General Statute § 33-920(a)..................................................................................... 7, 11

Connecticut General Statute § 33-926(a)-(b)............................................................................... 7, 11

Connecticut General Statute § 33-929(e)........................................................................................ 8

Connecticut General Statute § 33-929(f) ........................................................................................ 8

**Rules**

Federal Rule of Civil Procedure Rule 12.......................................................................... 1, 3, 6, 13

**Other Authorities**

Restatement (Second), Conflict of Laws §§ 43-44................................................................. 9, 11

Plaintiffs Nicole Van Dorn, Amy Snyder, Cheyenne Collins and Petty Officer 2nd Class Dylan Morgan Boone, USN, ("Plaintiffs") submit this memorandum of law in opposition to defendant E.I. du Pont de Nemours and Company's ("DuPont") Rule 12(b)(2) motion to dismiss Plaintiffs' Third Amended Complaint ("the Complaint") for lack of personal jurisdiction.

## I.   INTRODUCTION

Despite registering as a foreign corporation to conduct business in Connecticut, appointing an agent for the service of process there, waiving service of process in this case, admitting to millions of dollars in sales of products in this state and ████████████████████ Plaintiffs allege caused the helicopter crash that gives rise to these claims, defendant E.I. du Pont de Nemours & Co. ("DuPont"), has filed a second motion to dismiss, arguing that the exercise of personal jurisdiction over it violates fundamental fairness and the Fourteenth Amendment of the United States Constitution.  This argument is made in the face of the above admitted facts and completely ignores the allegations in Plaintiffs' Complaint and the implications of the material submitted by DuPont in support of the present motion, which qualitatively enlarge the relationship between DuPont and Connecticut.  DuPont also fails to address the ameliorative features of 28 U.S.C. § 1631, which permits the transfer of these claims from Connecticut to a state where it could otherwise have been brought, such as Delaware or New York.

For these and other reasons developed herein, DuPont's motion should be denied.

## II.   FACTS

Plaintiffs Nicole Van Dorn, Amy Snyder and Cheyenne Collins ("the Wrongful Death Plaintiffs") allege wrongful death and survival claims against DuPont arising from the crash of a Sikorsky MH-53E helicopter ("the subject helicopter") off the coast of Virginia on January 8, 2014

("subject crash").  Plaintiff Dylan Morgan Boone, who survived the subject crash but was seriously injured, alleges personal injury claims.

Plaintiffs' Complaint alleges that the subject crash was caused in part by the deterioration of wiring containing polyimide insulation manufactured by DuPont and known under the trade name "Kapton."  The Complaint asserts that DuPont is registered to do business as a foreign corporation in Connecticut and had an ongoing contractual or business relationship with at least two Connecticut corporations, defendants Sikorsky Aircraft Corporation ("Sikorsky") and General Electric Company ("General Electric"), to design, manufacture and evaluate the Kapton wiring that was installed in the subject helicopter in Connecticut and which Plaintiffs allege caused the subject crash.

Importantly, DuPont has submitted a document within its motion called a "specification" that bolsters Plaintiffs' case for specific personal jurisdiction.  When it manufactured the subject helicopter, Sikorsky issued a "specification" seeking ████████████████████████████ ████████.  That specification (Doc. No. 107-4) states ████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  The Complaint also alleges that subsequently, as DuPont became aware that Kapton-insulated wiring was subject to degradation and linked to on-board fires aboard military aircraft, it again reached into Connecticut to evaluate methods and procedures to remediate such defects with defendants Sikorsky and General Electric.

Consequently, the pleadings and affidavits, when construed in a light most favorable to Plaintiffs, establish a prima facie showing that DuPont reached into Connecticut to manufacture,

evaluate and inspect a portion of the very wiring that was installed into the subject helicopter and caused the subject crash.

## III.   SUMMARY OF ARGUMENT

When opposing a Rule 12(b)(2) motion to dismiss prior to conducting discovery, a plaintiff need only establish a prima facie showing of personal jurisdiction to avoid dismissal; all pleadings and affidavits are construed in the plaintiff's favor. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Plaintiffs' Complaint alleges sufficient contacts between DuPont and Connecticut to satisfy both state and federal jurisdictional requirements. Furthermore, the affidavits and exhibits submitted by DuPont fortify that conclusion.

### A.   DuPont Has Partly Consented to Jurisdiction in Connecticut.

DuPont is registered to do business in the State of Connecticut and has a registered agent for service of process there. *Complaint*, ¶ 25(g). Therefore, DuPont has consented to specific personal jurisdiction in Connecticut to the extent permitted by the Fourteenth Amendment of the Due Process Clause. *See WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 357 (D. Conn. 2011) ("[A] foreign corporation . . . that properly complies with the Connecticut registration statute should be deemed to have consented to personal jurisdiction . . . where such jurisdiction is otherwise constitutionally permissible."); *USES Mfg., Inc. v. Rocky Mountain Inst. Research*, 94 F. Supp. 2d 218, 222 (D. Conn. 2000) ("[T]he Connecticut superior courts have uniformly construed Section 33–929(a) as a consent to jurisdiction providing a statutory basis for their exercise of jurisdiction.").

B.     **Jurisdiction Over DuPont in Connecticut Comports with Due Process.**

1.     **DuPont Reached into Connecticut to Install, Inspect and Manufacture Its Kapton Insulated Wiring in the Subject Helicopter. The Failure of That Wiring Gives Rise to the Present Claims.**

Plaintiffs allege that the explosion that caused their injuries was caused in part by defective wiring insulated with a polyimide film material marketed by DuPont under the trade name "Kapton." *Complaint*, ¶ 25(b)-(c). For simplicity's sake, Plaintiffs refer to the wiring containing that material as "Kapton" or "Kapton wiring." Plaintiffs assert that DuPont entered into a contract or agreement with Sikorsky and General Electric and manufactured, sold and evaluated the defective Kapton wiring that led to the subject crash. *Id.* ¶¶ 24, 25(b). Materials submitted by DuPont support those allegations. In order to achieve standardization in its aircraft fleet, the United States military issues standards to which manufacturers must conform. Attached to the Declaration of Diane Westwood Wilson (Doc. Nos. 107-3, 109) as "Exhibit A" is a specification ("the Sikorsky Specification") pertaining to ████████████████████████████████ ████████████████████████ and that DuPont contends conforms to that specification. *See* Declaration of Diane Westwood Wilson, ¶ 5.

The Sikorsky Specification required Sikorsky to ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████. *Id.* ¶ 24.

4

Consequently, DuPont has deeply-rooted Connecticut contacts related to the manufacture of the defective wiring that allegedly caused Plaintiffs' injuries. This is so even if DuPont's agents never set foot in the state. The requirement that a defendant be physically present in a state in order to be subject to jurisdiction there has long been discarded. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 476, 477 (1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). DuPont's extensive contacts with Connecticut give rise to Plaintiffs claim and strongly support a prima facie showing of personal jurisdiction over DuPont.

**2.     DuPont Sold Its Kapton Wiring in Connecticut Through Regional Distributors.**

In addition, the Sikorsky Specification illustrates the substantial flow of DuPont-manufactured Kapton wiring into Connecticut for the manufacture of the subject helicopter. Three of the four wire distributors listed in the specification ███████████████████████ ████████████████████████████████████████████████████████████████████████████.

Notwithstanding DuPont's narrowly worded representation that it never sold Kapton wiring "directly" to Sikorsky, *see Aff. of Peter C. Mester* ¶ 9 (Doc. No. 107-2), DuPont provided Kapton wiring to ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████. If "a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has purposefully reaped the benefits of the laws of each State in that trade area for due process purposes." *Vandelune v. 4B Elevator Components Unltd.*, 148 F.3d 943, 948 (8th Cir. 1998) (alterations omitted) (internal quotation marks omitted). Although they

are not required to do so to oppose Defendant's motion, Plaintiffs therefore satisfy the "stream of commerce" test regarding personal jurisdiction.

### 3.     Jurisdiction Over DuPont in Connecticut is Reasonable.

Given the above, DuPont bears the heavy burden of convincing this Court that jurisdiction in Connecticut is not reasonable.  DuPont cannot satisfy that requirement.  DuPont is a Delaware corporation and, given modern forms of communication, it will bear no burden litigating this matter in nearby Connecticut.  More importantly, essential evidence and witnesses regarding the manufacture of the subject helicopter in this products liability case are in Connecticut. Furthermore, Connecticut is Plaintiffs' chosen forum, and it is where all other defendants in this matter are subject to this Court's jurisdiction.  Jurisdiction over DuPont in Connecticut is therefore reasonable.

DuPont's motion to dismiss should be denied.

## IV.   <u>ARGUMENT</u>

### A.     DuPont Is Subject to Personal Jurisdiction in Connecticut.

Where, as here, no discovery has taken place and no evidentiary hearing has been held, a court should deny a Rule 12(b)(2) motion to dismiss if the complaint contains sufficient factual allegations that, when accepted as true, establish a prima facie showing of personal jurisdiction over a defendant.  *See Quinn v. Fishkin*, 117 F. Supp.3d 134, 138 (D. Conn. 2015) ("[W]here a defendant challenges 'only the sufficiency of the plaintiff's factual allegations, in effect demurring by filing a rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.'" (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

6

Even though DuPont has submitted two affidavits in support of its motion to dismiss, Plaintiffs' factual allegations are still to be accepted as true "'to the extent they are uncontroverted by'" those affidavits. *Brown v. CBS Corp.*, 19 F. Supp. 3d 390, 392 (D. Conn. 2014), *aff'd sub nom Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2014) (hereinafter "*Brown I*" and "*Brown II*"). The affidavits submitted by DuPont, which must be construed in Plaintiffs' favor, do not contradict Plaintiffs' essential allegations but, in fact, support them.

This Court has specific personal jurisdiction over DuPont if three requirements are met. First, Connecticut law must permit personal jurisdiction over DuPont. *Metzermacher ex rel. Metzermacher*, 570 F. Supp.2d 292, 297 (D. Conn. 2008). Second, the defendant must have the requisite "minimum contacts" with the forum. *Id.* at 299. Third, if Plaintiffs satisfy those standards, the burden then shifts to DuPont to make a compelling case that jurisdiction over it in Connecticut is unreasonable. *Burger King*, 471 U.S. at 478. Notwithstanding the above requirements, a defendant is always free to consent to the personal jurisdiction of a court and may do so expressly or impliedly. *See Brown II*, 814 F.3d at 641; *Worldcare*, 767 F. Supp. 2d at 355.

**B.     DuPont Has Consented to Personal Jurisdiction in Connecticut to the Extent Permissible by the Constitution.**

Connecticut law provides that registering to do business in Connecticut as a foreign corporation qualifies as consent to jurisdiction there, to the limits the Due Process Clause of the Fourteenth Amendment. Connecticut's long-arm statute, Conn. Gen. Stat. § 33-600 *et seq.*, imposes numerous duties on foreign corporations, like DuPont, who do business in Connecticut. First, DuPont must obtain a certificate of authority from the Connecticut Secretary of State, § 33-920(a). The law also requires DuPont to maintain an office in Connecticut and designate a registered agent for service of process or appoint the Secretary of State to act as one. § 33-926(a)-(b). DuPont is then "subject to *the same duties*, restrictions, penalties and liabilities imposed on,

a domestic corporation of like character," § 33- 924(b) (emphasis added).  Ensuring that a foreign

corporation cannot escape Connecticut jurisdiction by flouting these requirements, the statute

provides further that unregistered foreign corporations may be sued "upon any cause of action

arising out of such business." § 33-929(e).

Connecticut courts have repeatedly held that compliance with these statutes constitutes

consent to personal jurisdiction in Connecticut.  In *WorldCare*, 767 F. Supp. 2d at 358, for

example, the defendant, a Nebraska corporation, conceded that it was subject to Connecticut's

long-arm statute because "it was registered to do business in Connecticut and ha[d] a certificate to

do business."  This Court agreed, noting "a foreign corporation . . . that properly complies with the

Connecticut registration statute should be deemed to have consented to personal jurisdiction" as

long as doing so is otherwise constitutional. *Id.* at 357.  *See also USES Mfg.*, 94 F. Supp. 2d at

222 ("[T]he Connecticut superior courts have uniformly construed Section 33–929(a) as a consent

to jurisdiction providing a statutory basis for their exercise of jurisdiction."); *Wender v. Trading*

*Cove Associates*, No. 549346, 1999 WL 353474, *2 (Conn. Super. May 21, 1999) ("[A]

corporation which complies with the requisites of General Statutes § [33-920] by obtaining a

certificate of authority has, in fact, consented to the exercise of jurisdiction by the courts of this

state."); *Granger v. Marriott Corp.*, No. CV91-0398893S, 1993 WL 454236, *1 (Conn. Super.

Oct. 21, 1993) ("A foreign corporation has the option of appointing the Secretary of the State, or

an individual, or a domestic corporation or other authorized corporation as its agent for service.

Having done so the corporation [has] consented to the exercise of personal jurisdiction by this

court.")).

DuPont ignores this precedent and, instead, asks this Court to carve a loophole into

Connecticut's long-arm statute.  DuPont asserts that § 33-929(f), which confers jurisdiction over

foreign corporations in certain enumerated circumstances, may only be invoked by an in-state resident and an out-of-state plaintiff ever may *never* obtain long-arm jurisdiction over a registered foreign corporation in Connecticut. *See DuPont's Mem. Supp. Mot. Dismiss*, p. 10.  That sweeping interpretation directly contradicts the language of the Act, *see, e.g.*, § 33-924(b) ("A foreign corporation with a valid certificate of authority . . . is subject to the same duties, restrictions, penalties and liabilities imposed on, a domestic corporation of like character."), and, has been squarely rejected by Connecticut courts. *See Worldcare*, 767 F. Supp. 2d at 345 (District Court concluded long-arm statute applied to Nebraska corporation licensed to do business in Connecticut in case brought by Bermuda corporation); *Brown I*, 19 F. Supp.3d at 396 (District Court concluded it had jurisdiction over Maryland corporation in case brought by Alabama resident).

In rejecting the same argument that DuPont presents here, the *Worldcare* and *Brown I* courts relied primarily on the Appellate Court's decision in *Wallenta v. Avis Rent A Car System*, 522 A.2d 820 (Ct. App. 1987), a case brought against a Delaware corporation by a plaintiff injured in Alabama and employed by an Illinois corporation.  In *Wallenta*, the court could find "no good reason to provide a greater shield to foreign corporations which have acknowledged they do business here than to corporations which have not." *Id.* at 824.  The Court reasoned that when a foreign corporation authorizes "an agent or public official to accept service of process in actions brought against it, the corporation consents to the exercise by the state of judicial jurisdiction over it as to all causes of action to which the authority of the agent or official extends." *Wallenta*, 522 A. 2d at 824 (quoting Restatement (Second), Conflict of Laws §§ 43 - 44) (internal quotation marks omitted)).  Concluding that the defendant was subject to personal jurisdiction under Connecticut's long-arm statute, the court remanded the case for fact-finding and constitutional due process analysis. *Id.* at 208-09.

Since *Wallenta*, Connecticut courts have routinely applied this "two-step analysis" in deciding if a defendant is subject to personal jurisdiction in Connecticut, even where none of the plaintiffs were Connecticut residents. *Brown I*, 19 F. Supp. 3d at 395. First, they determine if the foreign corporation is registered to do business in Connecticut. If so, they determine if the jurisdiction would comport with the due process clause of the Fourteenth Amendment. *Id.*

The Second Circuit's recent holding in *Brown II*, affirming *Brown I*, slightly altered that analysis. In *Brown II*, the Second Circuit held that compliance with the Connecticut Business Corporation Act required "assent only to specific jurisdiction." 814 F. 3d at 637. Therefore, once a foreign corporation is registered to do business in Connecticut, a court may exercise specific jurisdiction over it to the extent permitted by Fourteenth Amendment's Due Process Clause.

DuPont relies on two decisions in attempting to combat this long line of precedent. Both are easily distinguishable from this case. In *Estate of Nunez-Polanco v. Boch Toyota, Inc.*, 339 F. Supp.2d 381, 382 (D. Conn. 2014), this Court concluded there was no personal jurisdiction over a Norwood, Massachusetts car dealership in a wrongful death action filed by a Massachusetts resident. Unlike this case, however, the defendant in *Nunez-Polanco* did not conduct business in Connecticut and there are no indications the dealership was registered to do business in the state. *See id.* at 384 ("Boch Toyota does not transact business in Connecticut and has no contracts to be performed in Connecticut . . . .").

Similarly, in *Pomazi v. Health Industries of America*, 869 F.Supp. 102, 104 (D. Conn. 1994), the Court concluded it did not have jurisdiction over a California hospital in a Lanham Act case brought by a New York plaintiff. The Court did not indicate whether the defendant corporations were registered to do business in Connecticut and, in a single sentence, asserted "the Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident

party against another nonresident." *Pomazi*'s holding, however was rejected in *Brown I.  See Brown I*, 19 F. Supp.3d at 393.   There, an Alabama plaintiff brought suit against a Maryland corporation in Connecticut. *Id.* at 396.  This Court noted that Connecticut law does indeed "confer personal jurisdiction on a registered foreign corporation . . . but the requirements of the due process clause must also be met." *Id.* at 394; *accord WorldCare*, 767 F. Supp. 2d at 357; *USES Mfg.*, 94 F. Supp. 2d at 222 ("[T]he Connecticut superior courts have uniformly construed Section 33–929(a) as a consent to jurisdiction providing a statutory basis for their exercise of jurisdiction.").

In addition, DuPont has consented to personal jurisdiction in Connecticut, regardless of the applicability of Connecticut's long-arm statute.  Consent 'is effective even though no other basis exists for the exercise of jurisdiction over a corporation.'" *Wallenta*, 522 A.2d at 824 (quoting Restatement (Second), Conflicts of Law § 44, comment (a)); *see also Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990) ("Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes.").  DuPont is registered to do business as a foreign corporation in Connecticut as required by § 33-920(a) and it has designated CT Corporation System located in Hartford, Connecticut, as its agent for service of process, as required by § 33-926(a)-(b). Accordingly, pursuant to *Wallenta*, this Court's holdings in *WorldCare, USES Manufacturing, and Brown I*, and the Second Circuit's decision in *Brown II*, DuPont has consented to personal jurisdiction as long as such jurisdiction comports with due process.[1]

---

[1] DuPont argues that the Complaint must be dismissed because Plaintiffs purportedly do not cite a statute.  Rule 8(a)(1), however, requires "a short and plain statement of the grounds for the court's jurisdiction," not a rote listing of statutory citations.  *See Johnson v. City of Shelby, Miss.*, __ U.S. __, 135 S. Ct. 346, 347 (2014) (per curiam) (holding citation of a statute unnecessary to satisfy Rule 8).

**C.    Jurisdiction over DuPont in Connecticut Comports with Due Process.**

Jurisdiction in Connecticut over Defendant DuPont comports with due process.  The first step of the court's due process inquiry is a "minimum contacts" analysis.  *Quinn*, 117 F. Supp.3d at 140.  The court must conclude that the defendant "purposely availed itself of the privilege of doing business in the forum so that [the] defendant could reasonably foresee being haled into the forum's courts."  *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 - 38 (2d Cir. 2001).  Furthermore, the plaintiff's claim must "arise[] out of or relate[] to" those "contacts with the state."  *Id.* at 39.  If the minimum contacts test is satisfied, the burden shifts to the defendant to show that exercise of personal jurisdiction in Connecticut would be "unreasonable," i.e. in violation of "traditional notions of fair play and substantial justice."  *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945).

> **1.    DuPont Reached into Connecticut to Install, Inspect and Manufacture Its Kapton Insulated Wiring in the Subject Helicopter.  The Failure of That Wiring Gives Rise to the Present Claims.**

Where a defendant has "purposely directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant has sufficient minimum contacts with the forum state.  *Sherman Assocs. v. Kals*, 899 F. Supp. 868, 871 (D. Conn. 1995) (quoting *Burger King*, 471 U.S. at 472).  The Complaint alleges that DuPont played a critical role in the manufacture of the subject helicopter by "designing, manufacturing, assembling, testing, inspecting, servicing, distributing and selling Kapton . . . that was installed in the subject helicopter within the State of Connecticut" by Sikorsky, a Connecticut Corporation.  *Complaint*, ¶ 25(a)(1).

That allegation is supported by documents submitted by DuPont in support of its motion to dismiss.  In order to achieve standardization in the aircraft it purchases, the United States

military issues specifications to which manufacturers must conform.   Exhibit A to the Declaration of Diane Westwood Wilson (Doc. Nos. 107-3, 109) ("The Sikorsky Specification") is one such specification.  The Sikorsky Specification ████████████████████████████ ████████████████████.  It required Sikorsky to ██████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████.  By doing so, DuPont reached directly into Connecticut to play a substantial and continuous role in the evaluation of the faulty wiring that gave rise to Plaintiffs' injuries.

By itself, those facts should be enough to defeat DuPont's Rule 12(b)(2) motion.  After all, the extent of DuPont's liability in this case may very well be affected by DuPont's acts or omissions during the ████████████████████.  But the Complaint also alleges that DuPont had a "contractual or business relationship" with Connecticut Corporations Sikorsky and General Electric related to Kapton-insulated wiring in the subject helicopter.  ███████████ ██████████████████████████████████████████.  In addition, the Complaint further alleges, and no affidavits dispute, that DuPont became aware of the limitations and defects of the Kapton wiring installed in the subject helicopter after a similar in-flight fire occurred on board a nearly identical CH-53E helicopter in 1999.  *Complaint*, ¶ 71.  After that event, Plaintiffs allege that DuPont, in coordination with Connecticut Corporation Sikorsky, appeared in Connecticut to determine the cause of the premature deterioration of wiring insulated by Kapton.  *Id.* ¶ 25(f).  That allegation lends further support for this Court's assertion of personal jurisdiction over DuPont.

DuPont nonetheless resists this Court's jurisdiction on the grounds that it did not physically commit acts in Connecticut.  For example, in his affidavit in support of DuPont's motion, DuPont corporate counsel Peter Mester insists "DuPont has never conducted research and development, testing, or experiments relating to Kapton in Connecticut," "has never manufactured Kapton in Connecticut," "has never assembled Kapton in Connecticut," "has never installed Kapton in any product in Connecticut," and "has never sold Kapton *directly* to Sikorsky Aircraft Corporation," *Mester Affidavit* ¶¶ 5 - 9 (emphasis added).  But personal jurisdiction does not turn on a defendant's physical contact with the forum.  Indeed, "since the Supreme Court replaced the inflexible rule of *Pennoyer v. Neff*, 95 U.S. 714 (1877) with the modern test of 'minimum contacts,' the requirement of physical presence with the jurisdiction has been discarded." *Total Aviation Servs., Inc. v. United Jersey Bank*, 626 F. Supp. 1087, 1090 (E.D.N.Y. 1986).

Accordingly, while "territorial presence frequently will enhance a potential defendant's affiliation with a State . . . it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476.  ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████.  In doing so, DuPont should have reasonably foreseen being haled to Court in Connecticut ████████ ████████████.  *See id.* ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").  DuPont's deliberate Connecticut acts,

as they relate to the installation and testing and evaluation of faulty wiring in the subject helicopter in Connecticut, satisfy the minimum contacts analysis.

**2.      Plaintiffs Also Satisfy the "Stream of Commerce" Test.**

Plaintiffs need not rely on a "stream of commerce" theory in order for this Court to deny Defendant DuPont's motion.  Nonetheless, Plaintiffs satisfy that test.  In *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 298 (1980), the Supreme Court held "[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."  That is because a foreign corporation will have "clear notice that it is subject to suit" in the forum state and "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State."  *Id.* at 297.

The Supreme Court subsequently addressed the stream of commerce theory of specific personal jurisdiction in two plurality decisions.  In *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), a plurality of the Court led by Justice O'Connor held there must be a "substantial connection" between the defendant and the forum state in order for personal jurisdiction to be proper.  *Id.* at 112.  According to the Court, that substantial connection could arise by "designing the product for the market in the forum state, advertising in the forum State, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state."  *Id.* at 113.  A second plurality of the Court, led by Justice Brennan, found Justice O'Connor's analysis too restrictive, concluding that "[a]s long as a participant . . . is aware that the final product is being marketed in the forum State," jurisdiction over that market participant would not offend Due Process.  *Id.* at 117.

15

In 2011, the Supreme Court issued another plurality decision on the stream of commerce theory.  In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), a New Jersey plaintiff was injured by a scrap metal machine manufactured by a British defendant in the United Kingdom and sold through an American distributor.  *Id.* at 878.  Unlike here, the defendant in *McIntyre* never "engaged in conduct purposefully directed" at the forum state.  *Id.* at 886.  The plurality led by Justice Kennedy held that "the defendant's transmission of good permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882.  Justice Breyer, joined by Justice Alito, concurred with the result but did not agree with the Kennedy concurrence's attempts to "making broad pronouncements that refashion basis jurisdictional rules."  *Id.* at 888.  Relying on *Volkswagen* and *Asahi*, Justice Breyer observed that the defendant had no regular flow of sales into New Jersey and lacked "something more," i.e. "special state-related design, advertising, advice, marketing, or anything else" that would justify jurisdiction over the defendant in New Jersey.  *Id.* at 889.

Here, DuPont's contacts with Connecticut satisfy the more restrictive "stream of commerce plus" test advocated by Justice O'Connor in *Asahi*.  *See Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86 (D. Conn. 2001) ("In the wake of *Asahi,* some courts have explicitly adopted Justice Brennan's view, while others have determined to follow Justice O'Connor's stricter 'stream of commerce plus' theory").  First, as the ██████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████.  *Asahi*, 480 U.S. at 112.  Plaintiffs allege this was done pursuant to an agreement between DuPont and Connecticut Corporation Sikorsky.  In addition, DuPont sent Kapton wiring to distributors ██████████████████████

████████████████████████████████████████████████████

████████████████████. *See Vandelune v. 4B Elevator Components Unltd.*, 148 F.3d 943,

948 (8th Cir. 1998) ("When a foreign manufacturer pours its products into a regional distributor

with the expectation that the distributor will penetrate a discrete, multi-State trade area, the

manufacturer has 'purposefully reaped the benefits' of the laws of each State in that trade area for

due process purposes." (alterations and quotation marks omitted)).   Finally, Plaintiffs allege

DuPont injected its products, employees and expertise into Connecticut to remediate the premature

deterioration of wiring insulated by Kapton prior to the subject crash.   *Complaint*, ¶ 25(f).

Plaintiffs therefore also satisfy the "stream of commerce" test.

Whatever test is applied, Plaintiffs believe that DuPont has the requisite "minimum

contacts" with the State of Connecticut in this matter for this Court to exercise personal jurisdiction

over it.

### 3.    Jurisdiction Over DuPont in Connecticut Is Reasonable.

Because the Plaintiffs satisfy the minimum contacts test, the burden shifts to DuPont to

make "a compelling case that the presence of some other considerations would render jurisdiction

unreasonable." *Burger King*, 471 U.S. at 478.  Factors relevant to that analysis are:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the
> interests of the forum state in adjudicating the case; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the interstate judicial system's interest
> in obtaining the most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  Instances "in which

jurisdiction is so unreasonable as to defeat a showing of 'minimum contacts' are rare. *Simon v.*

*Philip Morris, Inc.*, 86 F. Supp. 2d 95, 133 (E.D.N.Y. 2000).  Indeed, "this will only occur where

'the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so

attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation

within the forum.'"  *Id.* (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

Jurisdiction over DuPont in Connecticut will not impose a significant burden on DuPont. DuPont is a global corporation headquartered in the northeastern United States and registered to do business in Connecticut.  *See id.* ("[T]he conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").  Any burden imposed on DuPont by way of its location in Delaware cannot overcome Plaintiffs' establishment of minimum contacts.  Connecticut also has an interest in the adjudication of this case.  The subject helicopter was designed, manufactured and sold in Connecticut and DuPont's alleged acts and omissions in that very manufacturing process give rise to their liability in this case.  Additionally, Plaintiffs have chosen this forum and that decision should be given significant deference.

Furthermore, litigating this case in Connecticut will result in the most efficient resolution of this matter.  Key documents and witnesses related to the manufacture of the subject helicopter are located in Connecticut.  Defendant General Electric is subject to jurisdiction here and L-3 has waived any objections to personal jurisdiction in this case.  If DuPont is dismissed from this action, Plaintiffs will be required to pursue their claims against DuPont in Delaware. *See Kernan v. Kurtz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) ("If we were to determine that New York could not exercise personal jurisdiction over Navitas, Kurz–Hastings would be forced to bring a separate action against Navitas, relitigating the issues in a second forum, presumably the Pennsylvania district court.").  And, should DuPont be dismissed, Plaintiffs will refile this case against DuPont in Delaware and then request the Judicial Panel on Multi-District Litigation to assign the case to this Court so as to streamline pre-trial matters.  Finally, Delaware has a lesser interest than

Connecticut in this case, the state where the subject helicopter was manufactured and sold to the United States government.

Therefore, jurisdiction over DuPont in Connecticut is reasonable.

**D.      Jurisdictional Discovery and Transfer.**

The legal standard pertaining to a grant of jurisdictional discovery is identical to the one applied to this motion.  A court will grant jurisdictional discovery if the Plaintiffs establish a prima facie showing of personal jurisdiction.  *In re Terrorist Attacks on September 11, 2001, 689 F. Supp.2d 552*, 566 (S.D.N.Y. 2010).  Accordingly, if this Court concludes a prima facie showing has been made, it may permit jurisdictional discovery and allow DuPont to move again, at a later date, for dismissal for lack of personal jurisdiction.

If this Court determines that Plaintiffs have not established a prima facie showing of personal jurisdiction over DuPont in Connecticut, Plaintiffs respectfully request that this Court transfer this matter, as it relates to DuPont, to the District of Delaware pursuant to 28 U.S.C. § 1631, which provides that "[w]henever a civil action is filed in a court . . . that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ." *See also* §1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . . "); § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

DuPont is a Delaware corporation and Plaintiffs have asserted non-frivolous claims in good faith against DuPont in this District. *See Ruiz v. Mukasy*, 552 F.3d 269, 277 (2d Cir. 2009) ("[T]he

19

record contains no indication whatsoever that Petitioners acted in bad faith by asserting their claims in this Court instead of in a district court. Additionally, although Petitioners' claims likely would be timely if filed anew in the district court, a transfer would expedite their review, thereby furthering the interest of justice.").  As a consequence, if this Court concludes it cannot exert personal jurisdiction over DuPont, Plaintiffs respectfully request this matter, as it pertains to DuPont, be transferred to the District of Delaware.

V.    **CONCLUSION**

For the foregoing reasons, Defendant DuPont's motion to dismiss should be denied.


Dated:   December 8, 2016

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: */s/ Francis G. Fleming*
    Francis G. Fleming, Esq. (CT 30032)
    Andrew J. Maloney, Esq. (CT 15639)

    *Attorneys for Plaintiffs,*
    *Nicole Van Dorn, Amy Snyder,*
    *Cheyenne Collins and Dylan Morgan Boone*

## CERTIFICATION

I hereby certify that on this 8th day of December, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electric filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_/s/ Francis G. Fleming_
FRANCIS G. FLEMING