UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE VAN DORN, as Surviving Spouse and Personal Representative of the Estate of LT. J. WESLEY VAN DORN, USN, deceased, et al | : : : : : | CIVIL NO.  3:15-cv-01877-AWT |
| Plaintiffs, | : : | |
| v. | : : | |
| SIKORSKY AIRCRAFT CORPORATION, et al | : : : | |
| Defendants. | : | FEBRUARY 13, 2017 |

### DEFENDANT L-3 COMMUNICATIONS CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT

L-3 herewith files its Reply to Plaintiffs' Memorandum of Law in Opposition (DE 123) to the Motions to Dismiss and to Strike Plaintiffs' Jury Demand of Defendants General Electric Company and L-3 Communications Corporation ("Ps' Opposition").

I.      Status of Proceedings

Since the filing of L-3's Motion (DE 105) to Dismiss Plaintiffs' Third Amended Complaint ("TAC" or "Complaint") (DE 91 and DE 91-1) and Strike Plaintiffs' jury demand, which incorporated Defendant General Electric Company ("GE")'s Memorandum of Law (DE 104) in Support of GE's Motion to Dismiss and Strike Plaintiffs' Complaint, there has been a seachange in the posture and complexion of Plaintiffs' captioned action. Plaintiffs have recently settled their claims against all other parties to this action, and Plaintiffs' claims against L-3 remain as the only claims to be adjudicated.

II.     <u>Plaintiffs' Negligence Allegations Against L-3</u>

Plaintiffs allege that "[r]egarding L-3's liability, the Complaint asserts that during an October 2012 inspection and afterwards[1], L-3 learned that loose and defective wiring was routed throughout the subject helicopter and, thereafter, failed to ensure a proper and safe distance between the subject helicopter's fuel transfer tubes and that wiring. *Id.* [DE 91-1] ¶ 145(a)-(c)." Ps' Opp. at p. 2. Plaintiffs' "Complaint contends that L-3 failed to adequately warn users, operators and maintainers of the subject helicopter of the risk of onboard fires posed by the failure to remediate loose and deteriorating wiring located adjacent to the subject helicopter's fuel systems. *Id.* ¶ 145(a) [2]." *Id.*

As to L-3 specifically, Plaintiffs allege in their Fourth Claim for wrongful death, survival, and personal injury damages, that:

> In October 2012, and on other occasions, Defendant L-3 inspected, tested, serviced, maintained, overhauled and repaired the subject helicopter and its component parts

---

[1] Plaintiffs' Complaint states that L-3's alleged negligence occurred "In October 2012, and on other occasions". DE 91 at ¶ 27. The Complaint further states that L-3's alleged negligence occurred "During its October 2012 inspection, and at other times". DE 91-1 at ¶ 145. Plaintiffs do not state that L-3's alleged negligence occurred in October 2012 "and, thereafter".

Discovery will confirm that L-3's last involvement with the accident aircraft occurred prior to the U.S. Navy ("Navy")'s October 31, 2012 acceptance of the Navy-directed limited modification enhancements, not maintenance, to the accident aircraft that L-3 performed.

[2] ¶ 145(d) - (e). DE 91-1 at ¶ 145. In addition, Plaintiffs allege that "prior to January 8, 2014, Defendant L-3 had an ongoing and continuing duty to warn and was required by contract, specification, standard and/or otherwise, to make certain that any defects in the components and replacement parts for the subject helicopter … were corrected during the maintenance, testing, inspection and servicing of the subject helicopter by Defendant L-3 prior to causing injury or death." DE 91-1 at ¶ 148.

Discovery also will confirm that none of Plaintiffs' allegations have any basis in fact, that the known Kapton wiring problems were only worsened by the Navy's "fix", which L-3 was not even contracted nor tasked to perform on the accident aircraft. L-3 intends to move for summary judgment at the earliest opportunity.

>and systems, including, but not limited to the subject helicopter's electrical systems, including its wiring and wire insulation, fasteners and ties, and the subject helicopter's fuel systems, including its fuel lines, fuel transfer tubes, fasteners and ties. During this October 2012 inspection, defendant L-3 noted a number of discrepancies with the wiring on the subject helicopter.

DE 91 at ¶ 27. Sounding more in product liability than in negligence, Plaintiffs also allege that L-3 had a further "duty to use reasonable care in the development, production and distribution of instructions for the safe use of the subject helicopter, including, but not limited to, operation, training, and maintenance manuals"; DE 91-1 at ¶143; and at ¶ 147:

>the subject helicopter and its component parts … were unreasonably dangerous and unsafe by reason of the defective maintenance, testing, inspection and servicing of the subject helicopter and its component parts, and the inadequate and unsafe instructions, manuals, cautions and warnings issued by Defendant L-3.

On behalf of the Wrongful Death Plaintiffs, the Complaint seeks not only "all legally available damages under the Death on the High Seas Act, 46 U.S.C. §§ 30301-30308," ("DOHSA") but also continues to seek damages from L-3 under "any other applicable laws, including but not limited to, damages for sorrow, mental anguish and solace, pre-death pain and suffering, loss of income, services, protection, care, and assistance of the deceased, medical expenses, [and] funeral expenses." DE 91 at ¶ 12 and ¶ 30; DE 91-1 at ¶ 165. And Similarly, Plaintiff Boone seeks not only "all legally available damages under General Maritime Law," but also under "any other applicable laws, including applicable state laws." DE 91 at ¶ 13; DE 91-1 at ¶ 165. Plaintiffs also demand a trial by jury.

For the reasons and authorities established in GE's Memorandum of Law (DE 104) in Support of GE's Motion to Dismiss and Strike Plaintiffs' Complaint, which L-3 has adopted and incorporated into L-3's Motion (DE 105) to Dismiss Plaintiffs' Complaint, together with the further reasons and authorities established in this L-3's Reply to Plaintiffs' Opposition, L-3 moves to

dismiss Plaintiffs' state law claims and/or strike Plaintiffs' damages claims to the extent they seek recovery for damages other than those permitted under DOHSA and general maritime law. L-3 also moves to strike Plaintiffs' demand for a jury trial.

### III. Law and Argument

#### A. Admiralty Law Applies To Plaintiffs' Maritime Tort Action

Plaintiffs invoke the admiralty jurisdiction of the Court. DE 91 at ¶ 31. Article III, § 2, of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction. Determination of the question whether a tort is "maritime" and thus within the admiralty jurisdiction of the federal courts has traditionally depended upon the locality of the wrong. If the wrong occurred on navigable waters, the action is within admiralty jurisdiction. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 253 (1972). In this case the accident occurred on navigable waters on the high seas. DE 91 at ¶ 1. Therefore, Plaintiffs' action against L-3 involves a maritime tort within the admiralty jurisdiction of this Court, which Plaintiffs have properly invoked.

"'With admiralty jurisdiction,' we have often said, 'comes the application of substantive admiralty law.' *East River* S. S. *Corp.* v. *Transamerica Delaval Inc.,* 476 U. S. 858, 864 (1986)." *Yamaha Motor Corp., U.S.A. v.* Calhoun, 516 U.S. 199, 206 (1996). Maritime law is a species of judge-made federal common law. *Id.* Admiralty and maritime law include a host of special rights, duties, rules, and procedures. In 1990 the legal seascape of maritime law changed when the Supreme Court decided *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

#### B. Congress Has Prescribed Comprehensive Tort Recovery Schemes For Plaintiffs' Classes Of Maritime Actions

In *Miles* the Supreme Court emphasized the importance of uniformity in the face of applicable federal legislation. "In this era, an admiralty court should look primarily to these legislative

4

enactments for policy guidance . . . [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." *Miles,* 498 U.S. at 27. The concern expressed in *Miles* was with inconsistency with statutory law. As the Supreme Court later held in *Yamaha,* "[w]hen Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is no cause for enlargement of the damages statutorily provided." *Yamaha,* 516 U.S. at 215. Therefore, where Congress has prescribed a comprehensive tort recovery scheme for a class of maritime actions, admiralty remedies cannot be supplemental by state law remedies.

In *Miles* and *Yamaha* the Supreme Court has articulated principles of uniformity relevant to wrongful death actions, and more generally, to maritime tort law, which have moved subsequent courts to limit recovery in other similar contexts. *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084 (2d Cir. 1993) (state law claims dismissed because actions brought under federal courtsø admiralty jurisdiction are governed solely by federal maritime law).Where Congress has spoken, anomalies in maritime law exist, õ[b]ut these anomalies are an artifact of the interaction between general maritime law and the succession of specific congressional enactments.ö *Miles,* 498 U.S. at 36.

> When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided. See *Miles,* 498 U. S., at 30-36 (Jones Act, rather than general maritime law, determines damages recoverable in action for wrongful death of seamen; *Off*shore Logistics, Inc. v. *Tallentire,* 477 U. S. 207, 232 (1986) (DOHSA, which limits damages to pecuniary losses, may not be supplemented by nonpecuniary damages under a state wrongful-death statute);

*Yamaha,* 516 U.S. at 215. õCongress, in the exercise of its legislative powers, is free to say "this much and no more." An admiralty court is not free to go beyond those limits. *Miles,* 498 U.S. at 24. õThese statutes both direct and delimit our actions.ö *Miles,* 498 U.S. at 27. õ[A]dmiralty courts have always shown a special solicitude for the welfare of seamen í We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remediesö. *Miles,* 498 U.S. at 36.

5

C.  There Are No Common Law Rights Or Remedies Saved To The Plaintiffs-Suitors

Section 9 of the Judiciary Act of 1789 "sav[ed] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Ch. 20, §9, 1 Stat. 77. Congress has revised the language but its substance remains largely unchanged and now states "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U. S. C. § 1333(1). What the drafters intended in creating the saving-to-suitors clause is not entirely clear, and the Supreme Court in *Lewis* observed that the saving-to-suitors clause preserves remedies and the concurrent jurisdiction of state courts "over some" admiralty and maritime claims. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U. S. 438, 444-445 (2001).

Plaintiffs' action does not present a case of concurrent federal jurisdiction with some other basis of jurisdiction to which the saving-to-suitors clause could apply. The Wrongful Death Plaintiffs pled and are strictly limited to their DOHSA admiralty cause of action. Plaintiff Boone can plead no high-seas maritime-based tort that could give rise to a separate state common law right of action or remedy[3].

That Plaintiffs invoke the diversity jurisdiction of the Court is of no avail. DE 91 at ¶ 29. As observed by the Second Circuit in *Preston*:

> When, as in this case, plaintiffs bring a suit based upon diversity jurisdiction, we nevertheless apply substantive federal maritime law if we have admiralty jurisdiction. *See Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 410-11, 74 S.Ct. 202, 205-06, 98 L.Ed. 143 (1953); *Carey v. Bahama Cruise Lines,* 864 F.2d 201, 206-08 (1st Cir.1988); *Capozziello v. Brasileiro,* 443 F.2d 1155, 1157 (2d Cir.1971) ("That the district court's

---

[3] Any claim by Plaintiff Boone for the application of Connecticut law also is time-barred against L-3 by the Connecticut statute of repose; CGS § 52-584; and only the federal maritime statute of limitations can permit Plaintiff Boone's maritime tort action against L-3 to proceed. *See* 46 U.S.C. § 30106 (formerly 46 U.S.C. App. § 763a).

6

> diversity, rather than its admiralty, jurisdiction had been invoked does not change the applicable law."); *Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81, 83 (D.Conn. 1993) ("The fact that plaintiff relies partly on diversity jurisdiction does not affect the rule that maritime law applies.") … Because damage recovery rules are substantive … jurisdiction was properly in admiralty, and "[w]ith this jurisdiction comes the application of substantive maritime law." *Wahlstrom,* 4 F.3d at 1087.

*Preston v. Frantz*, 11 F.3d 357, 358-359 (1993). *See also*, F.R.Civ.P. Rule 9 (h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.").

Plaintiffs also attempt to invoke the federal question jurisdiction of the Court, but to no avail. DE 91 at ¶ 30. As the Supreme Court explained in *Lewis*, "to define admiralty jurisdiction as federal question jurisdiction would be a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce." *Id*. [*Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959)], at 373." *Lewis,* 531 U.S. at 455.

### D. Plaintiffs Cannot Expand Or Supplant Their Maritime Claims With State Law Remedies

Congress has prescribed comprehensive tort recovery schemes for Plaintiffs' classes of maritime actions, and the Court, sitting as an admiralty court, is not free to go beyond those limits to the benefit of these seamen and those who are dependent upon them.

#### 1. The Wrongful Death Plaintiffs Claims Are Governed Exclusively By DOHSA

DOHSA, by its terms, limits recoverable damages in wrongful death suits to "pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. § 30303 (formerly 46 U.S.C.App. § 762) (emphasis added). This explicit limitation forecloses recovery for nonpecuniary loss. Congress has spoken directly to the question of recoverable damages on the high seas, and "when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer … *Higginbotham* [436 U. S. 618 (1978)]*, supra,* at 436 U. S. 625." *Miles,* 498 U.S. at 31. Plaintiffs

assert that Connecticut law should be allowed to supplement their DOHSA remedies, because in 2000 Congress amended DOHSA; 46 U.S.C. § 30307; to permit recovery of nonpecuniary damages in commercial aviation accidents that occur beyond 12 nautical miles on the high seas. DE 123 at p 7. However, "Congress, in the exercise of its legislative powers, is free to say 'this much and no more'", and when Congress has spoken, "[a]n admiralty court is not free to go beyond those limits." *Miles,* 498 U.S. at 24. *See also*, *Wahlstrom*, 4 F.3d at 1086 (the explicit language of the DOHSA does not permit the recovery of non-pecuniary damages, nor may such recovery be supplemented by state wrongful death statutes or the general maritime law where the DOHSA governs).

### 2. Plaintiff Boone's Claims Are Governed Exclusively By General Maritime Law

Where Congress has prescribed a comprehensive tort recovery scheme for a class of maritime actions, admiralty remedies cannot be supplemented by state law remedies. *Yamaha,* 516 U.S. at 215. Just as Congress, by enacting DOHSA, proscribed the Wrongful Death Plaintiffs' maritime rights and remedies, so did Congress, by enacting the Jones Act, also proscribed Plaintiff Boone's maritime rights and remedies. In *Miles* the Supreme Court recognized the value of a uniform rule for remedies for claims arising on the high seas and territorial waters and observed that it was restoring uniformity for "all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Miles,* 498 U.S. at 33.

> When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. We assume that Congress is aware of existing law when it passes legislation.

*Miles,* 498 U.S. at 32. To be sure, the Jones Act defines the remedies available to seamen who are injured or killed on the high seas. Those remedies are limited to pecuniary damages and do not include exemplary damages. *Miles,* 498 U.S. at 32. The "the Jones Act … precludes any state

remedy". *Yamaha,* 516 U.S. at 212.

    E.  <u>Plaintiffs Have No Right To Jury Trial</u>

There is no right to a jury in actions instituted in admiralty. *See Waring v. Clarke*, 46 U.S. (5 How.) 441, 458-60, 466, (1847). Plaintiff Boone is not a Jones Act seaman who otherwise could be entitled by federal statute to a jury trial in his maritime action against L-3. The Seventh Amendment does not grant a right to a jury trial in an action in the federal courts' admiralty jurisdiction. The Advisory Committee notes accompanying the merger of civil and admiralty jurisdiction in the Federal Rules of Civil Procedure in 1966 state for Rule 9(h): "It is no part of the purpose of this unification to inject a right to jury trial into those admiralty cases in which that right is not provided by statute." Rule 38(e) F. R. Civ. P. also states: "These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."

Plaintiffs' reliance on *Woosley v. Mike Hooks, Inc.,* 603 F.Supp. 1190 (W.D. La. 1985) is misplaced. *Woosley* was a joint Jones Act / unseaworthiness maritime case. The *Woosley* court felt constrained to have the purely maritime claims against non-employer defendants tried to the jury where plaintiffs invoked a statutory Jones Act right to jury trial, and all claims arose out of the same occurrence. *Woosley*, 603 F. Supp. at 1193. The *Woosley* court relied on *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063 (5th Cir.), *cert. denied,* 454 U.S. 972 (1981), to supply "the most compelling reasons for trying the entire case to the jury", because of concerns expressed for judicial economy. *Woosley*, 603 F. Supp. at 1192. *Woosley* noted that the "*Powell* court did express a concern that undue expansion of the use of juries in federal admiralty cases could disrupt the statutory scheme of federal jurisdiction. *See* 644 F.2d at 1070-71." *Woosley*, 603 F. Supp. at 1193-1194. However, because *Woosley* was a joint Jones Act / unseaworthiness maritime case, "[s]ignificantly, the course charted in *Powell* cannot be navigated here." *Woosley*, 603 F. Supp. at 1193. Such a Jones Act /

unseaworthiness maritime case is not presented by Plaintiff Boone's maritime action, and there is no basis for the Court to expand the use of juries in federal admiralty cases.

The silence of the Seventh Amendment regarding juries in admiralty cases, the explicit rejection of juries in such cases by the first Congress, the preservation of the rule against juries in admiralty by Rules 9(h) and 38(e), and the Advisory Committee notes accompanying the Federal Rules, unambiguously affirming the rule against juries in admiralty cases and rejecting any alteration by the courts, all require that Plaintiffs' jury demand be stricken in this case.

Respectfully submitted,
DEFENDANT
L-3 COMMUNICATIONS CORPORATION


BY  /s/ Steven E. Arnold
Steven E. Arnold ct07966
sea@salaw.us
SA Law, P.C.
8 Whittier Place, Suite 14F
Boston, MA 02114
(617) 670-0868
Its Attorneys

**CERTIFICATION**

I certify that on February 13, 2017 a copy of the foregoing was filed electronically and served by regular mail, postage prepaid, on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    /s/ Steven E. Arnold
         Steven E. Arnold